HENRY S. HOWE, executor, *vs.* GURDON S. HOWE & others.

Essex. March 11, 1901. — October 17, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Tax,* On collateral legacies. *Limitations, Statute of.*

St. 1891, c. 425, imposing a tax on collateral legacies and successions, provides in § 4 that all taxes imposed thereby shall be payable by executors, administrators or trustees " at the expiration of two years from the date of their giving bond," and in § 18 provides that " The treasurer of the Commonwealth shall within six months after the same shall be due and payable, bring suit in his own name for the recovery of all taxes remaining unpaid." *Held,* that the provision in regard to the treasurer bringing suit is directory merely, and does not limit the right of recovery to two years and six months after the giving of bonds by executors, administrators or trustees. *Whether* the general statute of limitations would be applicable to a suit brought by the treasurer after six years from the time when the tax was due and payable, was not before the court and was not considered.

Collateral legacies of future and contingent interests are taxable under St. 1891, c. 425. The tax is to be paid when the contingency occurs and the determina-

tion of the value of the future interest is to be postponed until the happening of the event. It is then to be valued as of the time of the testator's death.

In valuing future and contingent interests for taxation as collateral legacies under St. 1891, c. 425, when the contingency has happened, a preceding life interest to be deducted must be valued as of the time of the death of the testator and is to be determined by the actuaries' combined experience tables and four per cent compound interest, as required by the last sentence of § 13 of the act, without regard to the actual length of life in the particular case.

St. 1895, c. 307, exempting from the tax on collateral legacies bequests not exceeding $500, does not apply to legacies to which persons became entitled before it took effect.

A testator directed his trustees to pay to his sister quarter yearly during her life such sums as with the rents and income of her own property would give her a net annual income of $10,000, and left remainders which were subject to taxation as collateral legacies under St. 1891, c. 425. The net annual income of the testator's sister from her own property at the time of the testator's death was $1,453.20, leaving $8,546.80 to be paid to her by the executors and trustees. For the purpose of deducting the sister's life interest in valuing the collateral legacies, the Probate Court ruled, that she was to be regarded as entitled to an annuity of $8,546.80 during her life. The treasurer of the Commonwealth objected that the amount that was to be paid to her was not an annuity or life estate that could be appraised by the combined experience tables, as required by § 13 of the act, because it was of uncertain amount and might fluctuate from year to year. *Held,* that for aught that appeared the net income from the sister's own property had remained and would remain substantially the same from year to year and, if that was so, the annuity fairly might be said to be $8,546.80 during her life, or, as the intention of the testator manifestly was that his sister should receive a net income of $10,000 during her life, the annuity might be regarded as one of $10,000 a year, subject to reduction by the amount of the net income if any received from her own property, so that in computing the value of her interest the annuity properly might be reckoned as one of $10,000 a year, and that in any case the treasurer had no ground for complaint.

MORTON, J. This is a petition to the Probate Court under St. 1891, c. 425, § 14, by the executor of the will of James H. Carleton late of Haverhill for the determination of certain questions arising under said will in regard to legacy and succession taxes. The petitioner and the treasurer of the Commonwealth both appealed from the decree of the Probate Court. The appeals were consolidated by order of the single justice, and at the request of the parties were reserved by him, "for the consideration of the full court upon the petition and answers and the facts set out in the decree, such order and decree to be made as to the full court shall seem meet."

The testator died in March, 1893. The will was duly proved and executors were appointed and gave bonds in May of the same year. Subsequently the petitioner's coexecutor resigned,

and the petitioner has since acted and is now acting as the sole executor. By the residuary clause the rest and residue was given in trust for certain purposes, and trustees were duly appointed under this clause and gave bonds in May, 1895. This petition was filed in July, 1898, and, prior to the filing of it, no suit had been brought by the treasurer of the Commonwealth for the recovery of any legacy or succession tax. The testator's estate exceeded $10,000 in value after the payment of all debts, and by his will a large part of it went to persons not within the classes exempted by the provisions of St. 1891, c. 425, § 1, from the payment of a collateral inheritance tax.

The first question is whether, if the estate was subject to any tax, the right to collect it has been lost by the failure of the treasurer to bring suit therefor within two years and six months after the executors and trustees gave bonds. The Probate Court ruled that it had not, and we think that the ruling was right.

The petitioner contends that the effect of so much of § 4 as provides that all taxes shall be due and payable at the expiration of two years, and of so much of § 18 as provides that the treasurer shall bring suit within six months after the taxes are due and payable, is to establish two years and six months from the giving of bonds by the executors, administrators and trustees as a limit to the right of recovery. But we think that the provision in regard to the treasurer is directory merely, and that if it had been intended to limit the right of recovery to two years and six months after the giving of bonds by executors, administrators or trustees, language clearly expressing that purpose would have been used, as in the cases of the statute limiting actions against executors and administrators, and of the general statute of limitations. Pub. Sts. c. 136, § 9; c. 197, § 1. The statute provides, that administrators, executors and trustees shall be liable for the taxes with interest till paid, and that the taxes shall be a lien on the property subject to them till they are paid. §§ 1, 4. There are also provisions that no specific legacy subject to the tax shall be delivered by the executor until he has collected the tax (§ 5), that when legacies chargeable upon real estate are subject to a tax, it shall be a charge upon the real estate until paid (§ 6), and that no final settlement of the account of an

executor, administrator or trustee shall be allowed till all taxes have been paid (§ 16). The plain import of all these provisions is that nothing except payment or a satisfaction of the tax in some form shall operate as a discharge of it or prevent its collection. The petitioner objects that according to this construction, the treasurer can bring suit at any time and that the lien will continue indefinitely. But, even if that were so, the Legislature having imposed the tax well may have deemed it proper that nothing except payment should discharge it and that the remedies provided for its collection should remain open until it was paid. Under St. 1823, c. 133, where no limit was fixed to the lien which was given, it was held in *Hayden* v. *Foster*, 13 Pick. 492, that the lien continued till the tax was paid. The question whether the general statute of limitations would be applicable to a suit brought by the treasurer after six years from the time when the tax was due and payable is not before us and need not be considered. See *Rich* v. *Tuckerman*, 121 Mass. 222.

The petitioner further contends that no tax can be levied in respect of the appointees of the household furniture and effects, or in respect of the final disposition of the fund of $40,000. The household furniture and effects were bequeathed to the testator's sister Mary C. Flint for life with directions that upon her death the same should be distributed as she and one Susie B. Sanders should appoint. The life estate of Mrs. Flint was not taxable, and it was not ascertained till more than two years and six months after the executors and trustees had given bonds who the appointees were or whether they were exempt. We infer, though it is nowhere distinctly stated in the record, that none of them come within the exempted classes. The $40,000 was given to the petitioner in trust to pay the income to Gurdon S. Howe till he arrived at the age of forty-five and then to pay over the principal to him. If he died before reaching that age then the principal was to go to such heirs of his body as should be living when he would have reached the age of forty-five, and in default of such heirs then to his widow for life with remainder to two institutions exempt from taxation. It is admitted that the interest of Gurdon S. Howe until he attains the age of forty-five years is subject to the tax.

The contention of the petitioner in respect to these matters is that it was not ascertained till after the expiration of the time when taxes provided for by the statute are due and payable who the appointees of the furniture and effects were, and that until Gurdon S. Howe arrives at the age of forty-five years or dies it is uncertain and contingent in whom the fund of $40,000 will vest, and therefore in neither case is any tax collectible. There is no provision in the statute relating specifically to interests that vest after the death of a testator, and before the expiration of two years or two years and six months from the giving of bonds by executors, administrators and trustees, and the contention of the petitioner is in substance and effect that only those interests which vest at the death of the testator are taxable, and that future and contingent interests are not taxable. The treasurer of the Commonwealth objects that the life interest of Mrs. Flint should be determined according to the time that she actually lived and not according to the " actuaries' combined experience tables and four per cent compound interest " as provided in the concluding sentence of § 13.

The Probate Court ruled that the future interest in the household furniture and effects was subject to a tax and that the valuation was to be ascertained by deducting the value of the life interest of Mrs. Flint reckoned according to the combined experience tables with compound interest at four per cent, as if the same had been appraised within three months after the testator's death while she was living. In regard to the fund of $40,000 it ruled that any interest to which the two institutions may become entitled was exempt, but that any interest to which Gurdon S. Howe will become entitled if he attains the age of forty-five, or to which the heirs of his body or his widow may become entitled if he dies before arriving at that age are subject to the tax and that such tax shall be paid by the executor when the time arrives and that the determination of the value of such future interest be postponed until the happening of said event.

We think that these rulings were right. The obvious intent of the Legislature was to tax every interest, present or future, passing by will to persons or institutions other than those

expressly exempted, when the value of the estate after the payment of debts exceeded $10,000. By § 1 "All property within the jurisdiction of the Commonwealth, and any interest therein . . . whether tangible or intangible" is included, and by § 17 "the word 'property' shall include both real and personal estate, and any forms of interest therein whatsoever, including annuities." In the present case it is clear that notwithstanding the appointment by Mrs. Flint and Mrs. Sanders the future interest in the furniture and effects passed by the will of James H. Carleton. *Emmons* v. *Shaw*, 171 Mass. 410. The statute no doubt contemplates that the taxes shall be paid at the expiration of two years after the executors have given bonds, and that generally speaking all questions in regard to them will be settled within the time usually allowed for settling estates. *Callahan* v. *Woodbridge*, 171 Mass. 595, 599. *Minot* v. *Winthrop*, 162 Mass. 113, 125. But provision is made for other cases in the concluding words of § 18, "that the probate court may extend the time when any tax shall be due and payable whenever the circumstances of the case may require," and as such cases arise the other provisions of the statute apply to them. In ascertaining, for instance, when the time arrives, the valuation of a future interest, the value of a preceding life estate will be determined according to the rule laid down in the concluding sentence of § 13, and not according to the actual length of life in the particular case. And the time as of which according to the scheme of the statute, the valuation of the property liable to taxation is to be made, is the death of the testator (*Hooper* v. *Bradford*, 178 Mass. 95), and not as it might have been the time of the actual vesting of title or of possession in the party liable to the tax, and whenever the valuation takes place it is to be ascertained as of that date. This is an arbitrary rule, but it is the rule established, we think, by the statute. The "actual value" spoken of in § 13 has reference to that date and both it and "the actual market" value are to be arrived at, when a life estate is one of the factors, by determining the value of the life estate in the manner provided in § 13. Perhaps this construction may result in an inequality between a life estate where the remainder vests at the death of the testator, and one where it is to vest upon the

happening of some uncertain event in the future. But, if so, the result is due to the manner in which the statute is drawn, and does not of itself furnish a sufficient reason for construing the statute, if that were possible, so as to exclude future contingent interests. *Minot* v. *Winthrop*, 162 Mass. 113, 125.

There were several pecuniary legacies each of $500 and less to persons not exempt from taxation. The petitioner contends that under St. 1895, c. 307, § 1, which took effect April 25, 1895, these are exempt. That statute provides that "No bequest of a testator whose estate is subject to taxation under the provisions of chapter four hundred and twenty-five of the acts of the year eighteen hundred and ninety-one shall be subject to the provisions of said chapter unless the value of such bequest exceeds the sum of five hundred dollars." The Probate Court ruled that the legacies were not exempt, and we are of opinion that the ruling was right. The general rule is that statutes are to be construed as prospective in their operation unless it is distinctly expressed or clearly implied that they are to have a retroactive effect. *Garfield* v. *Bemis*, 2 Allen, 445. We see nothing to take this statute out of the general rule and think that it does not apply to legacies to which parties became entitled before it took effect.

In addition to a life estate in the household furniture and effects the testator gave his sister a life estate in his dwelling house with successive life estates upon her death to Susie B. Sanders and Gurdon S. Howe, and upon the termination of the life estates or if the property should not be occupied by the life tenants then the premises were to be sold and the proceeds distributed share and share alike to the said Susie B. Sanders, Henry S. Howe and Gurdon S. Howe respectively and their heirs, one third to the heirs of each. Mrs. Flint occupied the premises during her life, but Mrs. Sanders and Gurdon S. Howe elected not to occupy them. None of the parties were or are exempt from taxation except Mrs. Flint. The Probate Court ruled that the executor and the testator's personal estate were liable for a tax upon the value of the interest in the homestead estate disposed of by the testator after his sister's death, such value to be ascertained by deducting from the value of the homestead at his death the value of the sister's life interest

reckoned according to the combined experience tables with four per cent compound interest and as if the same had been appraised within three months after the testator's death. The treasurer of the Commonwealth objects that the value of the estate actually enjoyed by Mrs. Flint should be deducted and the tax assessed upon the interests in remainder which thus actually passed to Susie B. Sanders, Henry S. Howe and Gurdon S. Howe or their respective heirs, and he bases his contention upon the impossibility of determining during Mrs. Flint's life the value of the interests that would pass to Mrs. Sanders and Henry S. and Gurdon S. Howe or their respective heirs. But the life estates have all been determined, and the time has arrived when the value of the remainder can be ascertained, and for reasons already given we think that the ruling of the Probate Court as to the manner in which and the time as of which it should be ascertained was correct.

The testator also directed his executors and trustees to pay over to his sister quarter yearly during her life out of the rest and residue which was given to them in trust for that and other purposes such sums as with the rents and income of her own property would give her a net annual income of $10,000. The net annual income from her own property at the time of the testator's death was $1,453.20, leaving $8,546.80 to be paid to her by the executors and trustees to make up an income of $10,000. Upon the death of the sister the executors and trustees were directed to pay certain bequests and make certain conveyances and dispositions to and in favor of certain persons and institutions some of whom were liable to a collateral inheritance tax, and one of the questions presented relates to the value of the interest of Mrs. Flint in the rest and residue. The Probate Court in effect ruled that she was to be regarded as entitled to an annuity of $8,546.80 during her life and that the value of her interest was to be computed according to the actuaries' combined experience tables with four per cent compound interest and as if the same had been appraised and determined within three months after the testator's death. The treasurer for the Commonwealth objects that the amount that was to be paid to her was not an annuity or a life estate that could be appraised by the combined experience tables because it was of

an uncertain amount and was liable to fluctuate from year to year. If the amount was liable to fluctuate there is nothing to show how great or how small the fluctuation was likely to be, and for aught that appears the net income from her own property had remained and would remain substantially the same from year to year. If that was so we do not see why it fairly could not be said that the annuity was $8,546.80 a year, and why her interest in the rest and residue should not be valued accordingly, which was what the Probate Court did. See *Woods* v. *Gilson*, 178 Mass. 511; *Brimblecom* v. *Haven*, 12 Cush. 511; *Swett* v. *Boston*, 18 Pick. 123. There is another view. The intention of the testator manifestly was that his sister should receive a net income of $10,000 a year during her life. The annuity may be regarded therefore as an annuity of $10,000 a year subject to reduction by the amount of the net income, if any, received by Mrs. Flint from her own property, so that in computing the value of her interest in the rest and residue the annuity properly might be reckoned as an annuity of $10,000 a year. See *Cumings* v. *Cumings*, 146 Mass. 501; *Peareth* v. *Marriott*, 22 Ch. D. 182. But, if the property is subject to taxation at all, the petitioner does not object to the valuation of Mrs. Flint's interest in the rest and residue as ascertained by the Probate Court, and the treasurer of the Commonwealth cannot complain if the view suggested above is not adopted.

We have considered the objections taken by the petitioner and by the treasurer of the Commonwealth to the decree of the Probate Court so far as they have been insisted upon at the argument before us, and the result is that we think that the decree of the Probate Court should be affirmed.

*So ordered.*

*J. L. Thorndike*, for the petitioner.

*A. W. De Goosh*, Assistant Attorney General, for the treasurer of the Commonwealth.