JACKSON GRAIN COMPANY, X-CEL STORES, INC., and SEM-
INOLE FEED COMPANY v. J. M. LEE, as State Comp-
troller.

190 So. 464

Opinion Filed July 7, 1939

Rehearing Denied July 25, 1939

*A. Pickens Coles,* for Appellants;

*George Couper Gibbs,* Attorney General, and *Tyrus A.
Norwood,* Assistant Attorney General, for Appellee.

CHAPMAN, J.—On April 13, 1936, the Circuit Court of
Leon County, Florida, entered a final decree in the case of
Jackson Grain Company, a corporation, X-Cel Stores, Inc.,
a corporation, and Seminole Feed Company, a corporation,
plaintiffs, v. J. M. Lee, as Comptroller, defendant, per-
petually enjoining J. M. Lee, as Comptroller, from enforc-
ing or attempting to enforce as against the plaintiffs Classes
2 to 6, inclusive, of Subdivision B of Section 4 of Chapter
16848, Laws of Florida, Acts of 1935. Likewise per-
petually enjoining J. M. Lee, as Comptroller, from enforcing
as against the plaintiff the provisions of Subdivision B of
Section 4 of said Chapter as to the gross receipts arising

from the sale of bakery products, dairy products, ice, insecticides, fungicides, fertilizer and agricultural or horticulcultural products specified in Subdivision (f) of Section 2 of Chapter 16848, *supra.*

On the 1st day of December, 1936, this Court, in the case of Liggett Drug Company v. Lee, 126 Fla. 359, 171 So. 326, in construing Subdivision (f) of Section 2 and Subdivisions (a) and (b) of Section 4 of Chapter 16848, Acts of 1935, held that a tax on gross receipts was collectable against bakery products, dairy products, ice, insecticides, fungicides, fertilizer and agricultural or horticultural products or implements when sold by those who were *not* the producers or manufacturers thereof.

On the 10th day of September, 1937, the Circuit Court of Leon County, Florida, entered an order in the case of Jackson Grain Company, X-Cel Stores, Inc., and Seminole Feed Company v. J. M. Lee, as Comptroller, granting leave and authority on the part of J. M. Lee, as Comptroller, to file a bill of complaint in the nature of a bill of review, having as its objective the correction of the law expressed in the final decree entered by the Circuit Court of Leon County, Florida, *supra,* so as to conform with the rule enunciated by this Court in the case of Liggett Drug Co. v. Lee, *supra.* In conformity with said order so made a bill of complaint in the nature of a bill of review was filed in the Circuit Court of Leon County on the 30th day of September, 1937, and the Jackson Grain Company, X-Cel Stores, Inc., and Seminole Feed Company were made defendants thereto. The bill of complaint in the nature of a bill of review had as its objective and sought to modify, vacate, change, or annul the following portion of the final decree dated April 13, 1936, entered by the Circuit Court of Leon County, Florida, viz.:

"That Class 1 of Subdivision B of Section 4 of the Act

is valid and enforceable but that the gross receipts received
from the sale at retail of any bakery products, dairy prod-
ucts, ice, insecticides, fungicides, fertilizer and agricultural
or horticultural products are by Subdivision (f) of Section
2 of this Act exempted from the tax levied by Subdivision
B of Section 4 of said Act, by whomsoever sold; * * *
And that said defendant be, and he hereby is, perpetually
enjoined and restrained from enforcing the provisions of
Subdivision B of Section 4 of the Act as against the plain-
tiffs, or either of them, in so far as the same covers the
gross receipts from sales of bakery products, dairy products,
ice, insecticides, fungicides, fertilizer and agricultural or
horticultural products."

On December 6, 1937, counsel for defendants in the bill
of complaint in the nature of bill of review filed a motion
to dismiss on seventeen separate grounds, and on April 29,
1938, the Circuit Court of Leon County, Florida, entered
its order denying the motion to dismiss the bill of complaint
in the nature of a bill of review filed in compliance with
an order of the court granting leave and authority so to do
on the part of J. M. Lee, as comptroller of the State of
Florida, and an appeal has been perfected therefrom and
the order made by the Circuit Court of Leon County, Flor-
ida, denying the motion to dismiss is assigned as reversible
error in this Court.

The appellants, since April 13, 1936, the date of entry
of the final decree sought to be modified, altered and
changed, entered by the Circuit Court of Leon County,
Florida, have not paid the taxes as required by other busi-
ness enterprises of Florida. The decision of this Court in
Liggett Drug Co. v. Lee, *supra,* was filed on December 1,
1936, several months after the date of entry of the final
decree sought to be altered or modified in this case. It is
contended that the appellants should have filed an original

bill within six months after April 13, 1936, and for this reason the order appealed from is erroneous. Likewise, an appeal should have been taken by the Attorney General within the six months' period prescribed by statute; that the decree dated April 13, 1936, cannot be altered, changed or modified and the issues put at rest by the decree cannot now be inquired into because of the doctrine or law of *res adjudicata,* and the appellees cannot be required to pay the taxes demanded by Chapter 16848, notwithstanding the fact that other business enterprises are required so to do.

We cannot agree to this conclusion, because all persons, firms and corporations of Florida are equal before the law and especially is this true on the question of assessment and collection of taxes. It is the contention of the Attorney General that the appellees are liable for taxes under Chapter 16848, *supra,* and the liability began on September 10, 1937, the date of the order granting leave and authority to file a bill of complaint in the nature of a bill of review seeking to alter, amend, modify and change the final decree dated April 6, 1936, under which appellants claim immunity from taxes demanded by Chapter 16848.

The power to alter, amend, change or modify the final decree dated April 13, 1936, by a bill of complaint in the nature of a bill of review is fully sustained by the decisions of this Court. See City of Winter Haven v. Lake Elbert Citrus Fruit Co., 122 Fla. 422, 165 So. 360; *In re:* Newkirk, 114 Fla. 552, 154 So. 323; Miami Bank & Trust Co. v. Mahlstedt, 107 Fla. 282, 144 So. 659; Sapp v. Warner, 105 Fla. 246, 141 So. 124, 143 So. 648, 144 So. 481.

There is no error in the record and the order appealed from is hereby affirmed.

TERRELL, C. J., and WHITFIELD and BROWN, J. J., concur.

BUFORD, J., concurs specially.

THOMAS, J., dissents.

BUFORD, J. (concurring specially)—The salient facts of this case have been stated by Mr. Justice Chapman in the opinion prepared by him for the Court.

From that statement it appears that the decree entered by the Circuit Court of April 13, 1936, was improvidently entered and resulted from a misapprehension of the principles of law governing the subject matter, and that thereafter, and after the final decree had become absolute, to-wit on December 1, 1936, this Court in Liggett Drug Co. v. Lee, 126 Fla. 359, 171 So. 326, entered its opinion and judgment enunciating the law as it should have been applied in the decree of April 13, 1936, and from said date, December 1, 1936, to date the law has been enforced except as to the defendants in this suit according to the interpretation placed thereon in the Liggett case, *supra,* and all others like situated have been required to pay the tax which is now sought to be enforced against these defendants. These defendants have escaped taxation in this regard by reason of the final decree, *supra.*

In State *ex rel.* Gillespie, *et al.,* v. County of Bay, *et al.,* 112 Fla. 687, 151 So. 10, we held:

"Where statute relating to official duties is declared invalid by decree of circuit court because not legally enacted, and same statute in another suit is declared legally enacted and valid by Supreme Court, statute is valid from time of its enactment, and decree of circuit court is inoperative.

"Decree of circuit court in taxpayer's suit enjoining tax levy to pay county bonds on ground Act authorizing bond issue was not validly enacted *held* not *res adjudicata* in original mandamus proceedings by bondholders to compel tax levy wherein Supreme Court determined that Act was validly enacted, and mandate of Supreme Court may be

enforced as against circuit court's decree (Acts 1925, Ex. Sess., c. 11425)."

It may be conceded that it was the duty of the Comptroller and Attorney General of the State of Florida to have taken appeal from the final decree, *supra,* and to have prosecuted the same for review in this Court. It may be further stated in view of subsequent events herein referred to, that the mistake made by the said officials in not prosecuting an appeal from that decree constituted a legal fraud on the State.

It is recognized beyond question that a bill in the nature of a bill of review is available to correct a decree, the entry of which has been due to fraud, surprise, accident, or mistake. If this were a suit between private parties I would probably be inclined to hold that the decree sought to be modified and in fact reversed became *res adjudicata* as between the parties and is not now subject to review. But this is not a case between private parties. This is a case in which an officer by his default in failure to have a decree reviewed on appeal finds himself barred by the existence of this decree from enforcing a revenue statute against one taxpayer in the State while he is enforcing the same statute against all others and he comes asking the Court to wipe out that bar that he may proceed to enforce the Act alike against all parties.

*In re* Moseley's Estate (State v. Nagle, Nagle v. State), the Supreme Court of Kansas, 100 Kans. 495, 164 Pac. 1073, it was said:

"The State was not estopped to demand the payment of the tax, notwithstanding the delay of the State's prosecuting officers in commencing proceedings to collect it. Nor is it of any present consequences that the county attorney in some collateral or independent private litigation, as a private lawyer or otherwise, was fully apprised of the matters here

involved. The provision in the statute (Section 22) that the county attorney or the Attorney General shall commence proceedings for the collection of the tax 'within six months after the same becomes payable,' is a statutory direction to those officers—nothing more. Howe v. Howe, 179 Mass. 546, 61 N. E. 225, 55 L. R. A. 626. Their compliance or non-compliance therewith is no concern of the defendant as a litigant, although as a free citizen of a free state he may say or do anything proper in fair criticism of what he honestly considers to be negligence of duty on the part of public officers. In the absence of positive statutes clearly covering the subject, no inaction; procrastination or delay on the part of public officials is ever permitted to prejudice the rights of the State. State v. School District, 34 Kan. 237, 8 Pac. 208; State v. Dixon, 90 Kan. 594, 135 Pac. 568, 47 L. R. A. (N. S.) 905; State ex rel. v. Gerhards, 99 Kan. 462, 162 Pac. 1149; Pulaski County v. State, 42 Ark. 118; Dement, et al., v. Rokker, et al., 126 Ill. 174, 19 N. E. 33; Terre Haute, etc., R. Co. v. State ex rel., 159 Ind. 438, 65 N. E. 401; Haehnlen v. Commonwealth, 13 Pa. 617, 53 Am. Dec. 502; State v. Mayor, etc., of City of Columbia (Tenn.) Ch. App., 52 S. W. 511.

"In the early case of United States v. Kirkpatrick, 9 Wheat. 724, 735-737, 6 L. Ed. 199, in which it was urged that sureties on the official bond of a federal collector of revenues were discharged because of delay in bringing an action on the bond, the Supreme Court, speaking by Mr. Justice Story, said:

" 'Then, as to the point of laches, we are of opinion that the charge of the court below, which supposes that laches will discharge the bond, cannot be maintained as law. The general principle is that laches is not imputable to the government; and this maxim is founded not in the notion of extra-ordinary prerogative, but upon a great public

policy. The government can transact its business only through its agents; and its fiscal operations are so various and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions. * * * It is admitted that mere laches unaccompanied with fraud forms no discharge of a contract of this nature between private individuals. Such is the clear result of the authorities. Why, then should a more rigid principle be applied to the government—a principle which is at war with the general indulgence allowed to its rights which are ordinarily protected from the bars arising from length of time and negligence? It is said that the laws requre that settlements should be made at short and stated periods, and that the sureties have a right to look to this as their security. But these provisions of the law are created by the government for its own security and protection, and to regulate the conduct of its own officers. They are merely directory to such officers, and constitute no part of the contract with the surety. * * * Without going more at large into this question, we are of opinion that the mere laches of the public officers constitutes no ground of discharge in the present case.'

"In People v. Brown, *et al.*, 67 Ill. 435, 438, it is said:

" 'It is a familiar doctrine that the State is not embraced within the statute of limitations, unless specially named and by analogy would not fall within the doctrine of estoppel. Its rights, revenues and property would not fall within the doctrine of estoppel. Its rights, revenues and property would be at fearful hazard, should this doctrine be applicable to a state. A great and overshadowing public policy of preserving these rights, revenues and property from injury and loss by the negligence of public officers forbids the application of the doctrine. If it can be applied in this

case, where a comparatively small amount is involved, it must be applied where millions are involved, thus threatening the very existence of the government. The doctrine is well settled that no laches can be imputed to the government, and by the same reasoning which excuses it from laches, and on the same grounds, it should not be affected by the negligence or even wilfulness of any one of its officials.'

"In Josselyn v. Stone & Matthews, 28 Miss. 753, 763, the rule is thus stated:

" 'It is a universally recognized rule that no laches is to be imputed to the State and against her; that no time runs so as to bar her rights. This is a great principle of public policy, intended to secure the rights and property of the public against loss or injury by the negligence of public officers and agents. And upon the same reason it is the settled doctrine that the general words of a statute do not include the State or affect her rights, unless she be specially named, or it be clear and indisputable from the Act that it was intended to include the State. People v. Gilbert, 18 Johns. (N. Y.) 228; United States v. Hoar, 2 Mason, 314 (Fed. Case No. 15,373); Inhabitants of State of Maryland v. Bank of Maryland, 6 Gill & J. 205-226 (26 Am. Dec. 561); * * * The rights of the State. are simply unaffected by such statutes, and of this all the world are bound to take notice.' "

In State *ex rel.* Lott v. Brewer, 64 Ala. 287, it was declared:

" 'Estoppels against the State cannot be favored. The * * * cannot arise from the laches of its officers; not on the notion of extraordinary prerogative, but upon a great public policy. U. S. Kirkpatrick, 9 Wheat. 735 (6 L. Ed. 199).' "

In Federal Surety Co. v. Board of Education of Marshall County *et al.,* 222 Ky. 502, 1 S. W. (2) 954, it was said:

"It is earnestly insisted that an individual who knew that

the principal was defaulting would be guilty of such negligence as would prevent him from recovering if he did not give the surety notice of the wrong. But, on the other hand, the rule is well settled that the commonwealth is not affected by the laches of its officers. The reason for the rule is obvious. An individual is responsible for his own dereliction, but the State must do its business by its officers, and the public, which is only another name for the State, should not suffer for the negligence of these officials. The rule is so well established that it is no longer open to question in this jurisdiction."

Equity and good conscience require that the appellant here be required to pay the tax involved the same as others like situated. No intervening equities have arisen by reason of the entry of the decree of April 13, 1936. No rule of property right has been established; no third parties have been misled to their detriment by the entry of that decree.

I can see no good reason to hold that following the law as enunciated in the case of State *ex rel*. Gillespie v. Bay County, *supra,* the Comptroller might be compelled by mandamus to collect the tax and by reason of the entry of a judgment in mandamus by this Court and the decree of April 13, 1936, become inoperative and yet the Comptroller may not move by a bill in the nature of a bill of review to set aside and vacate that decree which was improvidently entered. In such cases, I reach the conclusion that the Comptroller has, though late, adopted a proper procedure by which the error and mistake may be corrected with due respect to the dignity of orders and decrees of the Court and with a due regard to the performance of his duties as a public official.

I feel quite certain that there is no merit in the contention

that laches or estoppel may operate to bar the Comptroller in this regard.

So the order appealed from should be affirmed.