Nos. 20,748 and 20,860.

*In re* THE ESTATE OF T. W. MOSELEY, Deceased (THE STATE OF KANSAS, *Appellant,* V. PAUL R. NAGLE, as Executor, etc., *Appellee*).

SYLLABUS BY THE COURT.

1. INHERITANCE TAX LAW—*Effect of Repealing Statute.* The repeal of the inheritance tax act of 1909 (Laws 1909, ch. 248; Gen. Stat. 1909, §§ 9265-9291) by chapter 330 of the Laws of 1913 did not relieve the executor of an estate nor the probate court of any unperformed duties imposed upon them by the act.

2. SAME—*Laches—No Bar to Action by the State.* Rule followed that no inaction, procrastination or delay on the part of public officers will prevent the state from recovering its due, nor bar the state's right thereto.

3. INHERITANCE TAX—*Collection—Statute of Limitations.* A statute requiring certain public officials within six months to commence proceedings to collect a sum of money due the state is a mere legislative direction to those officers; and it is not a statute of limitations in favor of the debtor, by the invocation of which he can defeat the state's claim.

4. INHERITANCE TAX—*Discharge of Executor Without Payment—Error.* Where the inheritance tax under the act of 1909 was not paid by an executor of an estate having ample funds with which to pay the tax, an order of a probate court approving his final account and discharging the executor before he had paid the tax is invalid, and should be set aside on motion of the state.

5. SAME—*Earlier and Later Statutes—Construction.* Rule followed that older statutes must be read in the light of later legislative enactments, and are subordinated thereto and must be harmonized therewith. Otherwise the older statutes must give way to the later enactments, and by implication are repealed thereby.

Appeal from Stafford district court; DANIEL A. BANTA, judge. Opinion filed May 12, 1917. Reversed.

*S. M. Brewster*, attorney-general, *John L. Hunt*, assistant attorney-general, and *Robert Garvin*, county attorney, for the appellant.

*Paul R. Nagle*, of St. John, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The state appeals from a judgment of the probate and district courts of Stafford county overruling a motion to set aside the probate court's order finally discharging an executor, notwithstanding he had failed to perform his duty under the inheritance tax law of 1909.

The pertinent circumstances may be briefly stated: In 1912, T. W. Moseley, a Stafford county citizen, died. By his will he left his property to his sister. The defendant, Paul Nagle, was appointed executor, and he qualified. In February, 1914, Nagle, who had discharged all the duties of his executorship except those prescribed by the inheritance-tax act, received his final discharge.

The omitted duties of the executor, under the act of 1909, were to file an inventory and appraisal of the testator's estate within three months after his appointment (Gen. Stat. 1909, § 9276), and to provide the funds out of the estate, or procure them from the heirs or legatees, with which to pay the inheritance tax, and to pay that tax (Gen. Stat. 1909, § 9272) ; and the probate court was forbidden (Gen. Stat. 1909, § 9285) to allow and approve the executor's account and to finally discharge him until the tax was paid.

The executor was discharged on February 7, 1914, after the inheritance-tax act of 1909 was repealed by chapter 330 of the Laws of 1913. But the repeal of that statute did not affect the state's right to the tax, nor did it relieve the executor and the probate court from their duties imposed by the act of 1909. (Gen. Stat. 1909, § 9037; Gen. Stat. 1915, § 10973; *The State, ex rel., v. Railway Co.*, 99 Kan. 831, 163 Pac. 157.)

The state was not estopped to demand the payment of the tax, notwithstanding the delay of the state's prosecuting officers in commencing proceedings to collect it. Nor is it of any

In re Moseley's Estate.

present consequence that the county attorney in some collateral or independent private litigation, as a private lawyer or otherwise, was fully apprised of the matters here involved. The provision in the statute (Laws 1909, ch. 248, § 22), that the county attorney or the attorney-general shall commence proceedings for the collection of the taxes "within six months after the same become payable" is a statutory direction to those officers—nothing more. (*Howe v. Howe,* 179 Mass. 546.) Their compliance or noncompliance therewith is no concern of the defendant as a litigant, although as a free citizen of a free state he may say or do anything proper in fair criticism of what he honestly considers to be negligence of duty on the part of public officers. In the absence of positive statutes clearly covering the subject, no inaction, procrastination or delay on the part of public officials is ever permitted to prejudice the rights of the state. (*The State v. School District,* 34 Kan. 237, 8 Pac. 208; *The State v. Dixon,* 90 Kan. 594, 135 Pac. 568; *The State, ex rel., v. Gerhards,* 99 Kan. 462, 162 Pac. 1149; *Pulaski County v. The State,* 42 Ark. 118; *Dement et al. v. Rokker et al.,* 126 Ill. 174; *Terre Haute, etc., R. Co. v. State, ex rel.,* 159 Ind. 438; *Haehnlen v. The Commonwealth,* 13 Pa. St. 617; *State v. Mayor, etc., of City of Columbia,* [Tenn.] 52 S. W. 511.)

In the early case of *United States v. Kirkpatrick,* 22 U. S. (9 Wheat.) 720, in which it was urged that sureties on the official bond of a federal collector of revenues were discharged because of delay in bringing an action on the bond, the supreme court, speaking by Mr. Justice Story, said:

"Then, as to the point of laches, we are of opinion that the charge of the Court below, which supposes that laches will discharge the bond, can not be maintained as law. The general principle is, that laches is not imputable to the Government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions. . . . It is admitted, that mere laches, unaccompanied with fraud, forms no discharge of a contract of this nature, between private individuals. Such is the clear result of the authorities. Why, then, should a more rigid principle be applied to the government? a principle which is at war with the general indulgence allowed to its rights, which are ordi-

*In re* Moseley's Estate.

narily protected from the bars arising from length of time and negligence? It is said, that the laws require, that settlements should be made at short and stated periods; and that the sureties have a right to look to this as their security. But these provisions of the law are created by the Government for its own security and protection, and to regulate the conduct of its own officers. They are merely directory to such officers, and constitute no part of the contract with the surety. . . . Without going more at large into this question, we are of opinion, that the mere laches of the public officers constitutes no ground of discharge in the present case." (pp. 735, 736, 737.)

In *The People v. Brown et al.,* 67 Ill. 435, it is said:

"It is a familiar doctrine, that the State is not embraced within the Statute of Limitations, unless specially named, and by analogy, would not fall within the doctrine of estoppel. Its rights, revenues and property would be at fearful hazard, should this doctrine be applicable to a State. A great and overshadowing public policy of preserving these rights, revenues and property from injury and loss by the negligence of public officers, forbids the application of the doctrine. If it can be applied in this case, where a comparatively small amount is involved, it must be applied where millions are involved, thus threatening the very existence of the government.

"The doctrine is well settled that no laches can be imputed to the government, and by the same reasoning which excuses it from laches, and on the same grounds, it should not be affected by the negligence or even willfulness of any one of its officials." (p. 438.)

In *Josselyn v. Stone and Matthews,* 28 Miss. 753, the rule was thus stated:

"It is a universally recognized rule that no laches is to be imputed to the State and against her; that no time runs so as to bar her rights. This is a great principle of public policy, intended to secure the rights and property of the public against loss or injury by the negligence of public officers and agents. And upon the same reason, it is the settled doctrine that the general words of a statute do not include the State, or affect her rights, unless she be specially named, or it be clear and indisputable from the act that it was intended to include the State. *People v. Gilbert,* 18 J. R. 228; *United States v. Hoar,* 2 Mason, R. 314; *Inhabitants of Stoughton v. Baker,* 4 Mass. R. 528; *State of Maryland v. Bank of Maryland,* 6 Gill & Johns, 205-226. . . .

"The rights of the State are simply unaffected by such statutes, and of this all the world are bound to take notice." (pp. 763, 764.)

In *The State, ex rel. Lott, v. Brewer,* 64 Ala. 287, it was declared:

"Estoppels against the state can not be favored. They . . . can not arise from the laches of its officers; not on the notion of extraordinary prerogative, but upon a great public policy.—*U. S. v. Kilpatrick,* 9 Wheat. 735." (p. 298.)

Since the statute forbade the approval of the executor's final account and therefore necessarily forbade his final discharge until the inheritance tax was paid, the order of the probate court discharging him was not binding on the state. (*Attorney General v. Stone,* 209 Mass. 186, 192; *Attorney General v. Rafferty,* 209 Mass. 321.)

We note the various older statutes and decisions cited by appellee touching procedure and practice in the probate court, relating to the administration and settlement of estates, governing executors, etc. These provisions are all subordinated to the later enactments of the legislature—subordinated to the last expression of the legislative will—and must be harmonized therewith. Wherever older enactments can not be harmonized with later enactments, the latter supersede, repeal or supplant them.

It is suggested that the procedure which the state has pursued to have this matter corrected and to recover its due is irregular, that it should have been done in some other way. It would not help the executor nor conserve the estate of Moseley if some more formal and elaborate proceeding had been instituted against the executor, the probate court, Paul Nagle individually and the beneficiary. There were various avenues of procedure open to the state which it might have pursued to recover its due, and if one had failed it might still try another. Indeed, the state's officials are bound to exhaust all the legal remedies available before their efforts to collect this sum due the state may be discontinued. The method looking toward that end adopted here was simple, practical and inexpensive—and it must be held that the probate court should have sustained the state's motion, and this cause is reversed with instructions to the district court to make the proper order to the probate court, directing it to set aside its former judgment on the state's motion and to set aside its order discharging the executor.