No. 21,634.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, v. H. J. PIPER, as Sheriff of Sherman County, *Defendant*.

No. 21,635.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, v. H. J. PIPER, as Sheriff of Sherman County, *Defendant*.

No. 21,636.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, v. H. J. PIPER, as Sheriff of Sherman County, *Defendant*.

SYLLABUS BY THE COURT.

1. JUSTICE OF PEACE—*Jurisdiction—No Authority to Grant Paroles, or Remit Jail Sentence.* A justice of the peace is without jurisdiction to grant a parole, and has no jurisdiction to remit a jail sentence, and such parole or remittance of jail sentence is a nullity.

2. HABEAS CORPUS—*Jurisdiction of Probate Court—Unexecuted Commitment.* A probate judge is without jurisdiction in habeas corpus to discharge a petitioner from the custody of an officer who holds the petitioner by virtue of an unexecuted judgment and commitment issued by another court of competent jurisdiction.

3. SAME—*Termination of Term of Commitment.* The term of a commitment to a county jail does not expire until the sentence of imprisonment recited in the commitment has been fully executed.

4. CRIMINAL LAW—*Delay in Execution of Jail Sentence Not Unreasonable.* Assuming, but without deciding, that an unreasonable delay in the execution of a judgment imposing a jail sentence will altogether relieve a convicted person from liability to serve such jail sentence, the circumstances of the present cases, where the jail sentences were imposed in February and the commitments were not issued until the following November, examined, and held that, while the lapse of time was unusual, it was not unreasonable, that the commitments should be executed, and that mandamus may issue to accomplish that purpose.

5. SAME—*Original Sentence of Commitment Should be Executed—Writ of Mandamus Should Issue.* Three persons pleaded guilty to violations

The State, *ex rel*, v. Piper.

of the prohibitory law before a justice of the peace, and were sentenced to jail and to pay fines and costs. Later the justice paroled the defendants and remitted the jail sentences when the fines and costs were paid. The justice of the peace resigned, and his successor issued commitments for their incarceration. The probate judge discharged them on writs of habeas corpus. *Held*, that the justice of the peace was without jurisdiction to' parole or remit the jail sentences, and that the probate judge had no jurisdiction to discharge the convicted persons from the custody of the sheriff who held them under the commitments for the terms of imprisonment which had not been executed; and *held*, also, that mandamus should issue to secure the execution of the judgments originally imposed.

Original proceedings in mandamus. Opinion filed December 7, 1918. Writs allowed.

*S. M. Brewster*, attorney-general, for the plaintiff; *James P. Coleman*, of Topeka, of counsel.

*E. F. Murphy*, and *Frank J. Horton*, both of Goodland, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: The state asks for writs of mandamus directing the sheriff of Sherman county to execute three commitments against William Hartstine, John H. Denny and J. H. Jarrett, and to confine them in jail for a period of thirty days. These three men had violated the prohibitory law and were prosecuted before a justice of the peace at Kanorado, in State Line township in Sherman county. They pleaded guilty, and each of them was sentenced to jail for 30 days and to pay fines of $100 and costs of prosecution. Three days later these men paid their several fines and costs, and thereupon the justice of the peace entered on his docket an order, as follows:

"Said fine and costs being fully paid, it is further ordered and adjudged by the court that the defendant, Wm. Hartstine, be paroled from said jail sentence until further ordered by this court. The court hereby remit the jail sentence.　　　　　　　　　(Signed) J. B. FORD,
　　　　　　　　　　　　　　　　　　　　*Justice of the Peace.*"

Similar orders were made in the cases of Denny and Jarrett.

About a week later, and notwithstanding the paroles and remitted jail sentences by the justice of the peace, Hartstine, Denny and Jarrett applied to the district court of Sherman county for paroles. The district court declined to act.

As the justice of the peace had assumed to parole these men and had remitted their jail sentences on payment of their fines and costs, he did not issue formal commitments for their imprisonment, and some weeks later, under circumstances which justify the inference that the duty of sending these men to jail was too distasteful to him, he resigned his office.

Some time later, a new justice of the peace was appointed to fill the vacancy, and after the latter had been in office about six months he issued the commitments for Hartstine, Denny and Jarrett, directing their incarceration in the Sherman county jail pursuant to judgments in their respective cases. Thereupon Hartstine, Denny and Jarrett applied to the probate judge of Sherman county for writs of habeas corpus. That court issued writs, to which the sheriff made answer showing the facts narrated above. The probate judge discharged the petitioners. The state made some effort to appeal, but the appeal was not perfected; and on motion of Hartstine, Denny and Jarrett it was dismissed by the district court, with the following additional order—

"And it is further ordered, adjudged and decreed by the court that the said defendant, William Hartstine, be and he is hereby released and dismissed from the custody of the said H. J. Piper, respondent herein and sheriff of Sherman county, Kansas."

There are no material facts in dispute in these lawsuits. Examining the legal questions in order, it may be noted that the original judgments pronounced against the parties were complete and regular in every respect. It is clear also that those judgments were irrevocable when once they were acquiesced in by part satisfaction, that is, by payment of fine and costs. (*The State v. Massa,* 90 Kan. 129, 132 Pac. 1182.)

It is also clear that the pretended paroles granted by the justice of the peace were void, for no power to grant paroles is vested in justices of the peace. So, too, the pretended orders of the justice remitting the jail sentences were nullities. That was an exercise of the pardoning power not vested in a justice of the peace. (*Sims v. Kennedy,* 67 Kan. 383, 73 Pac. 51.)

Touching the assumption of jurisdiction by the probate judge and his order discharging the petitioners on habeas corpus, it may be admitted that ordinarily those magistrates who by law are vested with power to issue writs of habeas corpus,

probate judges, district and supreme courts and the judges and justices thereof, always have power to hear applications and to make inquiry as to the cause of a petitioner's restraint of his liberty, but they do not have jurisdiction to discharge such petitioners under circumstances where the statute plainly forbids such discharge. The statute provides that the sheriff or other person having custody of the petitioner shall show his authority for restraining him. (Civ. Code, § 696.) The sheriff exhibited the commitments in compliance therewith. The statute declares that no court shall inquire into the legality of any judgment of a court of competent jurisdiction nor discharge a petitioner when the term of the commitment has not expired. (Civ. Code, § 699.) This matter was fully and clearly presented to the probate judge, and it was shown that the term of imprisonment imposed on the petitioners had not been served, that the judgment had not been executed (*Hollon v. Hopkins,* 21 Kan. 638), and that the term of the commitment had not expired. In other words, any inquiry made by the probate court was bound to disclose that it was altogether without jurisdiction, and its decree discharging the petitioners was a nullity. (*In re Terry,* 71 Kan. 362, 80 Pac. 586; *In re Will,* 97 Kan. 600, 155 Pac. 934; *In re Miller,* 97 Kan. 809, 156 Pac. 783.)

Probate judges, like justices of the peace, frequently have little or no learning in the law, and it is not an uncommon occurrence for overzealous counsel to induce them to assume a jurisdiction which they do not possess. The most notorious recent case of this character was the Callahan case (*The State v. Callahan,* 93 Kan. 172, 144 Pac. 189), where Callahan, a convicted burglar, was repeatedly discharged by the probate judges of Leavenworth and Sedgwick counties from the custody of the sheriff while the latter was endeavoring to place Callahan in the state penitentiary in accordance with a commitment issued by the district court in obedience to a mandate of the supreme court. This court held that the orders of the probate courts of Leavenworth and Sedgwick counties discharging Callahan on writs of habeas corpus were altogether void. The court said:

"The judgments rendered in the probate court of Leavenworth county and the probate court of Sedgwick county are each not merely erroneous, but are void for want of jurisdiction. . . .

"It is a matter in which there is no conflict of authorities, that where a court of competent jurisdiction first acquires jurisdiction in a particular matter no other court can legally assume jurisdiction unless the jurisdiction of the former court is by appeal or otherwise lawfully transferred to it." (*The State v. Callahan*, 93 Kan. 172, 176, 144 Pac. 189.)

It has often been decided that a discharge of a petitioner on habeas corpus, where the tribunal had no jurisdiction so to do, is a nullity. (*Vorce v. Oppenheim*, 37 App. Div. [N. Y.] 69, 55 N. Y. Supp. 596; *Spalding v. The People*, 7 Hill [N. Y.], 301; *Hecker v. Jarret*, 3 Binn. [Pa.] 404.)

Since the probate court was without jurisdiction to discharge the petitioners, its judgment was a nullity; no appeal was necessary, and the abortive appeal undertaken by the state may be disregarded. So, too, the supplementary language of the order of the district court in dismissing the appeal should be disregarded. That supplementary language directing the discharge of the petitioners was void, as the court had nothing before it except a motion to dismiss a defective appeal.

There remains only the question of delay in the issuance of the commitments. The judgments were pronounced against Hartstine, Denny and Jarrett on February 25, 1916. Owing to the illegal orders of the justice of the peace in paroling the men and remitting their jail sentences, their endeavors to procure paroles from the district court, the refractory attitude and delay of the justice and his subsequent resignation, the reasonable delay incident in finding another citizen who would serve as justice, and the necessary and reasonable time the new justice might be supposed to require to familiarize himself with the status of pending judicial business, the commitments were not issued until November 1, 1916. The delay was unusual, but it cannot be said to have been unreasonable, if such a delay would be fatal, and that point need not be decided. There is a well-known, necessary and practical rule to the effect that ordinarily no procrastination of public officials prejudices the state, and that their tardiness neither bars no defeats the state from vindicating its sovereign rights, except where positive statutes so provide. (*The State, ex rel., v. Gerhards*, 99 Kan. 462, 465, 162 Pac. 1149; *In re Moseley's Estate*, 100 Kan. 495, 164 Pac. 1073.) There is not the difficulty here which arose in the Sapp case (*The State, ex rel., v. Sapp*, 87 Kan. 740,

The State, *ex rel.*, v. Piper.

125 Pac. 78), where the district court deferred the imposition of judgment and sentence until the term of the district court had expired. Here the judgments were pronounced, and only their execution was delayed. Nor is there the same artificiality of terms of court in the jurisdiction of a justice of the peace. His court presumptively is always open for business. A delay in the pronouncement of judgment in a criminal case is not fatal in that court, and the justice does not lose jurisdiction by such delay. (*The State v. Massa*, 90 Kan. 129, 132 Pac. 1182.) Still less does a justice lose jurisdiction to issue a commitment or make other appropriate orders to carry into execution a judgment already decreed. In the case of *In re Strickler*, 51 Kan. 700, 33 Pac. 620, cited by counsel for defendant, the sentence of imprisonment is indefinite, contingent, and uncertain. No such infirmity affected the judgments in the present cases.

Some precedents are cited by defendant touching the rights of a person to be discharged from custody at or after the expiration of the date on which the term of imprisonment would have expired if the person had been promptly incarcerated when the sentence was pronounced. But there are many obvious exceptions to that rule. Delay in beginning the term of imprisonment for any good reason, such as an appeal and stay of proceedings, the death or resignation of the magistrate or of the officer charged with the execution of the commitment, the breach of a recognizance and escape or hiding of the person convicted or his resistance and defiance of the court's processes —or other delays which might be suggested—would not defeat the state nor give immunity to a person convicted under a penal statute. In *Hollon v. Hopkins*, 21 Kan. 638, where there was a delay of four years in executing the commitment, owing to the petitioner's escape from custody, it was held that the essential portion of the sentence of a criminal is the *punishment*, including the *kind* of punishment and the *amount* thereof, and that the "expiration of time without imprisonment is in no sense an execution of the sentence." (syl. ¶ 2.)

(See, also, *Ex parte Vance*, 90 Cal. 208; *Neal v. The State*, 104 Ga. 509.)

The writs of mandamus are allowed.