*In re* Krig.

---

No. 22,340.

*In re* S. E. KRIG, *Petitioner.*

### SYLLABUS BY THE COURT.

SENTENCE—*Fine and Imprisonment—Fine and Costs Paid—Imprisonment Postponed Indefinitely—Jurisdiction Lost—Commitment Illegal.* A sentence of fine and imprisonment was pronounced against defendants by a justice of the peace under an arrangement with the prosecuting officer and the justice, in effect, that the fine, attorneys' fees and costs should be paid by the defendants, and that the sentence of imprisonment would then be suspended at least ninety days, and might be indefinitely postponed, but if occasion should require their return or they should be recalled by the officers to serve the jail sentence, they would surrender themselves on request.    After about eight months the petitioner was taken into custody on a commitment then issued.    *Held,* in a habeas corpus proceeding, that the commitment was illegally issued, and the petitioner was entitled to a discharge.

Original proceeding in habeas corpus. Opinion filed December 6, 1919. Petitioner discharged.

*Charles T. Meuser,* of Paola, and *David Ritchie,* of Salina, for the petitioner.

*Richard J. Hopkins,* attorney-general, and *Maurice McNeill,* assistant attorney-general, for the respondent.

The opinion of the court was delivered by

JOHNSTON, C. J.: S. E. Krig seeks a release from the custody of the respondent, G. A. Lamm, sheriff of Miami county, on the ground that the commitment under which he is held was issued without authority of law and is therefore void. He and another were arrested for violation of the prohibitory liquor law, pleaded guilty before a justice of the peace of Miami county, and each was sentenced to pay a fine of $100 and to be imprisoned in the county jail for thirty days. Each paid the fine assessed, and also an attorneys' fee of $50, and costs amounting to $5.25, and was then released and set at large. There is some confusion in the record as to the penalties imposed on the defendants. Some of the testimony shows that there was a fine of $100 on each of the two counts alleged in the complaint against each defendant, but there is testimony to the contrary, and the justice of the peace testified that they paid all the fines, fees and costs that were assessed against them. The arrangement by which they were discharged from custody and not required to serve the sentence of imprisonment is the subject of controversy.

The petitioner appears to be the owner of an extensive ranch, and when arrested on June 24, 1918, had a large acreage of wheat ready for harvest, and also many cattle requiring attention. When the sentence was imposed, petitioner stated that his wheat crop would be lost if he was kept in jail, and the county attorney and justice of the peace agreed that if he would pay the fine, attorney's fee, and costs, he would not be required to serve the term of imprisonment at that time. A bond was prepared by the county attorney requiring them to surrender themselves to the sheriff on September 24, 1918, and executed, each signing for the other as surety. There is some conflict in the testimony as to the terms and intent of the agreement that the jail sentence should not be

*In re* Krig.

served. The petitioner testified that he was told that if he would pay the fine, fees, and costs, he would not have to go to jail; that an extension of ninety days would be granted; and at the end of that period other extensions would be granted from time to time until the matter was forgotten; and that statements of a like character were made by the county attorney. The testimony of the other defendant was substantially the same as that of the petitioner. When the ninety days spoken of had expired no action was taken by the officers to require compliance with the sentence. Three months later, or six months after the conviction, the county attorney wrote a letter to the petitioner calling his attention to the unsatisfied part of the judgment. It appears this letter did not reach the petitioner but was returned to the writer. Another letter was subsequently sent to the petitioner, but not until February 8, 1918. In response to this letter the petitioner returned to Miami county to adjust the matter, and was then committed to jail. The county attorney and the justice of the peace admit that they agreed to suspend the operation of the sentence upon the payment of the fines, fees, and costs, but say that they understood the defendants were to return at the end of ninety days and submit to the imprisonment imposed by the judgment. Each stated that he had doubts of the power of the justice to suspend judgment or to parole the defendants, but in view of the big wheat crop which was in peril, as well as the necessities of the period, which was during the war, and the difficulty to obtain harvesters, together with the claim of the defendants that the liquor in their possession was being taken home to meet the requirements of men employed to harvest the crop, it was concluded to take the chances of invalidating the judgment and allow the defendants to go at large and harvest the crop.

The justice of the peace might have suspended sentence for a reasonable time (*The State v. Massa,* 90 Kan. 129, 132 Pac. 1182; *In re Strickler, Petitioner,* 51 Kan. 700, 33 Pac. 620), but the statute does not give him power to suspend the judgment, or any part of it. (Gen. Stat. 1915, §§ 8314-8316.) It was said in *In re Strickler, Petitioner,* supra:

"When a sentence has been pronounced by the court, its operation begins at once, and under the section just quoted it is the duty of the sheriff to immediately proceed to carry the sentence into effect." (p. 702.)

In that case, a sentence of imprisonment was suspended and hung over the defendant for ninety days, to be executed at such time as the county attorney and the judge of the court might see fit, and it was held that the judgment was wholly unauthorized by law, and the commitment issued under it was illegal. In its facts that case is closely akin to this one, where the penalty of imprisonment was held over the defendant for about eight months, dependent upon the will and action of the county attorney and the court.

The facts of another case are somewhat similar to those of the instant case, namely *The State, ex rel., v. Sapp*, 87 Kan. 740, 125 Pac. 78. There the defendants pleaded guilty to a charge under an arrangement that their sentences were to be suspended upon the payment of the costs. The suspensions were to continue until the first day of May following—about five months—and they were required to report at that time and show their good faith in the matter. They were allowed various periods, ranging from thirty to ninety days, in which to pay the costs. It was held that under the circumstances the court had no discretion to suspend the imposition of the sentence as a disciplinary measure, or to permit defendants to go at large with the understanding that their subsequent conduct might affect the penalty and that they might escape punishment altogether under some circumstances. In a mandamus proceeding to require the court to pronounce sentence and impose the penalty of the law, it was ruled that the unreasonable delay, together with the lapse of the term, resulted in a loss of jurisdiction and a want of power to impose sentence and punishment.

The respondent places much reliance upon *The State, ex rel., v. Piper*, 103 Kan. 794, where a justice of the peace undertook to remit a part of the sentence and parole prisoners against whom he had pronounced a sentence of imprisonment, and shortly afterwards resigned his office. His successor issued a commitment to enforce the jail sentence that had been previously adjudged, and the defendants were taken into custody. In a habeas corpus proceeding, the probate judge ordered a discharge. Afterwards a proceeding in mandamus was begun to compel the execution of the sentence, and it was decided that the paroles issued were invalid and that, there

*In re* Krig.

having been no unreasonable delay, the judgment should be enforced. There, there was no indefinite sentence, no hanging of an axe over the heads of the defendants subject to fall on them at the direction of the county attorney or the court, as in the case of *In re Strickler, Petitioner*, supra. Neither was there any suspension of judgment and sentence as a matter of discipline or as a method of regulating the conduct of the defendants for a long time in the future, as in the case of *The State, ex. rel., v. Sapp*, supra. Nor was there a bargaining with the officers that only a certain part of the penalty should be enforced, as in the present case. The case we are considering is more nearly analogous to the rules announced in the Strickler and Sapp cases. There are circumstances tending to support the testimony of the petitioner, such as the failure to rearrest the defendants for so long a period while they were within the reach of process, the fact that no steps were taken at the end of the ninety-day period named in the bond, and also the apologetic letters that were subsequently sent to them. There is considerable in the testimony tending to show that they were allowed to go at large on the theory that they might not ever be required to suffer the additional penalty, and that they would not have been rearrested but for the fact that a judicial decision was brought to the attention of the officers that they had exceeded their authority in suspending the execution of part of the sentence, and that they were finally spurred to action because of the complaint that other defendants were not accorded the same favors. It appears that the county attorney discussed with them the fact that the county commissioners had certain powers to release prisoners from custody and that an appeal might be made to them in an emergency. His letters indicated that he told them that they might or might not be recalled, but if they were wanted they should return on request, and that they were to come back if occasion should present itself. In a letter which was substantially like an earlier one, the county attorney wrote:

"GENTLEMEN: Each of you signed the bond of the other to appear here if occasion should present itself for a purpose known best to each of you. The supreme court of this state has recently ruled that where one is charged with an offense and pays the fine, the justice of the peace

must issue a commitment for the balance of sentence. A commitment was therefore issued by Justice Ed. H. Wilson in each of your cases, and I remembered that you each asked me to write you should you be wanted instead of sending for you. I wish you would each get in touch with the other at once and come to finish the sentence as soon as convenient and save any embarrassment to yourselves or the officers here who accommodated you, at sheriff's office. This matter has been cause of much comment here because some of the local fellows could not get off. We accommodated you, you will remember, because of your big wheat crops lying idle.                    "Your friend,"
"Feb. 8, 1919."

Following the rule in *In re Strickler, Petitioner*, supra, and *The State, ex. rel., v. Sapp*, supra, it must be held that the commitment was illegally issued, and, the imprisonment under it being without authority, the petitioner is discharged.