No. 43,046

HARLEY BLAYLOCK and MARIAN L. BLAYLOCK, *Appellees* and *Cross Appellants*, v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant* and *Cross Appellee.*

(380 P. 2d 337)

Opinion filed April 6, 1963.

*Jerry W. Hannah,* of Topeka, argued the cause, and, *Charles N. Henson,* assistant attorney general, and *Mark L. Bennett, Jr.,* of Topeka, were with him on the briefs for the appellant and cross appellee.

*Peter A. Martin,* of Olathe, argued the cause and was on the briefs for the appellees and cross appellants.

*Alfred B. Page, Ralph F. Glenn, L. M. Cornish, Jr., M. D. Bartlow, Gary Rohrer* and *Jan W. Leuenberger,* all of Topeka, were on the briefs as *amicus curiae.*

The opinion of the court was delivered by

JACKSON, J.: This action was begun by Harley Blaylock and his wife Marian who are now denominated as the appellees and cross appellants. We shall hereinafter refer to them as plaintiffs and to the Highway Commission as the defendant. Plaintiffs are the lease-holders of a restaurant or cafe which is located on Interstate Highway No. 35 between Olathe and Kansas City in Johnson county.

Plaintiffs filed their action against the defendant commission in Shawnee county district court and later moved for a change of venue to Johnson county, which the Shawnee county court granted.

Plaintiffs complain that they had at one time a permit of access to the north two lanes of traffic which had been granted to plaintiff's lessors W. D. Craig and L. F. Cox. Plaintiffs assert that they had the right to use the aforementioned access and had depended upon such right when they entered into the ten-year lease of the restaurant in 1956.

Plaintiffs petition contained a copy of the access permit which was attached thereto as Exhibit "B." We set out a copy thereof:

"EXHIBIT 'B'

State Highway Commission of Kansas
Highway Entrance Permit

"WHEREAS, L. F. Cox & W. D. Craig, Partners D. B. A. Craigs Economy Service of Olathe, Kansas hereinafter termed the Petitioner, who is the owner of property abutting a State Highway known as Route U. S. 50, requests permission and authority to construct a commercial entrance to said State Highway, 0.5 miles Northeast from Olathe more particularly described as follows: Stations 455 to 460 Proj. F. I. 50-46 02-3, Located in S½, NE¼ Sec. 30 T 13S R 24E, and

"WHEREAS, the State Highway Commission plans future construction on this section of highway, which includes additional roadway lanes separated by a dividing strip, parallel frontage roads and other construction and devices for the protection and convenience of traffic, and

"WHEREAS, this future construction may require a change in location of the entrance(s) now desired by the Petitioner and prohibit direct ingress and egress to the main travelled highway, and

"WHEREAS, the State Highway Commission has acquired the necessary right-of-way in Johnson County by eminent domain, and its authority to control entrances and access facilities has been confirmed by the Johnson County District Court in Case No. 18188,

"THEREFORE, permission is hereby granted to construct temporary direct entrance(s) to the main travelled portion of said highway in its present stage of construction subject to the following terms and conditions:

"1. Petitioner agrees to relinquish his right to direct entrance to the main travelled roadway as herein granted at any future time that the State Highway Commission constructs frontage roads or provides other means of ingress and egress from the main travelled way to the property of the Petitioner.

"2. The Petitioner shall furnish all material, do all work and pay all costs of the construction of the temporary direct entrances requested by this permit and shall, in a reasonable length of time, restore said Highway to a condition similar or equal to that existing before commencement of the described work. It is, also, understood that the work shall be completed within six months after the date this permit is approved, otherwise, the permit becomes null and void.

"3. That the proposed work will be located and constructed to the satisfaction of the State Highway Engineer or his duly authorized representative, and as shown on the attached plans which are part of this permit. The material and construction methods used on all of the work within the Right-of-way limits shall conform to the current Standard Specifications of the State Highway Commission of Kansas.

"4. A check, or other suitable bond, in the amount of fifty dollars ($50.00) made payable to the State Highway Commission of Kansas is hereby deposited with this permit to guarantee and insure satisfactory performance of the conditions of this permit. The Petitioner agrees that in case of failure or refusal to perform the work satisfactorily the State Highway Commission may use all or any part of the deposit to repair or restore said Highway.

"When work covered by this permit is completed, notify the Division Engineer, L. H. Vincent at Topeka, Kansas, for inspection. If the work is satisfactorily completed when inspection is made by the Division Engineer, any unused portion of the deposit will be returned to the Petitioner.

"The amount of the above mentioned check shall be determined by the schedule of deposits as follows:

"Entrances: A $10 deposit is required for farm or house entrances not to exceed a twenty-four foot roadway. A $50 deposit is required for entrances having a roadway wider than twenty-four feet or for entrances to filling stations, refreshment stands or any other commercial establishment.

"5. In the granting of this permit the Petitioner agrees not to interfere or obstruct traffic on said Highway, unless specifically provided for in this permit.

"6. The Petitioner shall not, at any time hereafter, serve any patron while the vehicle of said patron is parked on any portion of the State Right-of-Way.

"7. The Petitioner, his successors or assigns, shall assume all risk and liability for accidents and damages that may accrue to persons or property on account of this work.

"8. That in the event the State Highway Commission deems it necessary or proper to make any alteration or improvement along or upon the Highway or Right-of-Way the Petitioner agrees to save the State Highway Commission harmless for any damage to said Petitioner's construction along or upon the said Highway or Right-of-Way and the Petitioner further agrees that upon notice being served upon him, he will, within a reasonable time, alter, change the location or move his construction or work off the Highway or Right-of-Way as requested by said Commission or its duly authorized representative without expense to the Commission aforesaid.

"9. The Petitioner agrees to notify the Division Engineer, State Highway Commission, Topeka, Kansas, before starting work.

"10. It is agreed that upon ultimate completion of the road as a four lane highway, the entrance at approximate plan station 455 + 70 shall remain as a permanent access to the north bound traffic lanes and that no crossover of traffic between the south bound lanes and the north bound lanes will be permitted.

"This permit is hereby accepted and its provisions agreed to this 26th day of Nov., 1952.

Signed  W. D. Craig,<br>
L. F. Cox<br>
<em>Petitioner.</em>

Witness  Richard Secrest

Permit granted this _____ day of _____, 19____.

STATE HIGHWAY COMMISSION OF KANSAS<br>
By Gale Moss,<br>
<em>Director.</em>

Witness  F. E. Harwi, Jr.

Secretary, State Highway Commission."

It is said that paragraph 10 was specially inserted in the paper.

It is alleged in the petition that plaintiffs' rent amounts to 3% of the gross sales or a minimum of $300 per month.

Plaintiffs contend that the above access permit was to constitute a permanent right of access to the north bound lanes of Interstate Highway No. 35. They, of course, stress the provisions of paragraph 10 in which we find the words: "shall remain as a permanent access to the north bound traffic lanes. . . ."

The pertinent part of the decision made by the trial court was as to the binding effect of the access permit. The court held that this was a binding, permanent permit and that plaintiffs had the right to rely on it and had the right to be compensated for its loss. The court approved the jury's verdict of $51,545 as being the proper amount due the plaintiffs.

It has now become the duty of this court to construe and decide the binding effect of the access permit noted above. There is no question that paragraph No. 10, as it appears in the permit, is speaking in a different tone than in the other parts of the document. In paragraph No. 1, the petitioner agrees to relinquish his right to direct access to the main traveled roadway as herein granted at any future time that the Commission constructs frontage roads or provides other means of ingress or egress from the main traveled way to the property of the petitioner.

In paragraph No. 2, the access to the main road is spoken of as temporary and only in paragraph No. 10 is there any indication that plaintiffs are being granted any permanent right of access. So defendant argues strongly that the permit is ambiguous and that it does not grant a permanent property right.

Moreover, it is argued that if the contract be interpreted as an exclusive franchise conveying a property right then its ambiguity requires judicial construction in favor of the public, citing 37 C. J. S. Franchises § 26, p. 182 and certain other authorities.

It is also argued that the state cannot be estopped. We are cited to the case of *State, ex rel., v. Paul and Grice,* 113 Kan. 412, 214 Pac. 425, in which Mr. Justice Dawson said:

"Counsel for appellants call our attention to a respectable line of decisions which hold that the state itself may be estopped to assert its rights in a public highway through nonuse, silence, apparent acquiescence, length of time, adverse possession, abandonment, long use at variance with the originally established road limits, and the like. This court has never given its sanction to any such doctrine. It is altogether out of accord with the theory of Kansas jurisprudence. Beginning with *Wood v. M. K. & T. Railway Co.,* 11 Kan. 323, 349, there is a long undeviating line of decisions down to and including *In re Moseley's Estate,* 100 Kan. 495, 164 Pac. 1073, and *The State, ex rel.,*

*v. Piper,* 103 Kan. 794, 798, 176 Pac. 626, which holds that laches and estoppel do not operate against the state, that no procrastination of public officials prejudices the state and that their tardiness neither bars nor defeats the state from vindicating its sovereign rights, except where positive statutes so provide. That the state's rights in a public highway differ in no material respect from any other of its manifold sovereign interests and concerns is also settled law. (See *Eble v. The State,* 77 Kan. 179, 184, 93 Pac. 803.)"

Attention is also directed to *State, ex rel., v. Wheat Farming Co.,* 137 Kan. 697, 22 P. 2d 1093, at page 715 where the question of estoppel against the state was again referred to and the statement in the Paul and Grice case again quoted and applied.

Thus, the court is of the opinion that the permit did not clearly give plaintiffs a permanent access to the northbound lanes, but was intended to give only a temporary right of access until the defendant Commission constructed frontage roads or provided other means of ingress and egress from the main traveled way to the property of the plaintiffs. This construction of the permit is fortified by the leasing agreement between the lessors and the plaintiffs (lessees) wherein they recognized the temporary nature of the permit by the following language:

"In event the present entrances are removed, and providing the state in building the service road leaves no access to the property, the rent will not be charged for the time traffic is cut off."

By their petition the plaintiffs herein claim damages for the taking of property rights, which it is alleged *they acquired under the permit.* These rights, they claim, must be taken by condemnation.

No appeal was taken either by the landowners, the lessors were not parties to this action, or the State Highway Commission in the original condemnation proceedings. In that proceeding the Commission acquired rights of access to the highway here in question. Thus, the instant case presents no question concerning the power of the Commission to control access to the property in question as against the landowners from whom such rights were taken, and the plaintiffs as lessees acquired no greater rights by an assignment than the lessors had.

On the facts presented it must be conceded the defendant Commission had authority to grant an access permit in its exercise of the police power of the state. The parties do not challenge this point.

It follows that the right of access acquired by the plaintiffs by an assignment of the lessors' rights under the permit was only a temporary right of access.

After the defendant Commission had completed the frontage road to the plaintiffs' restaurant, it had the right under the permit to remove the temporary entrances granted by the permit, and the plaintiffs were not entitled to recover damages against the Commission for their removal.

The judgment of the lower court is reversed.

ROBB, J., dissents.