No. 57,808

Frontier Ditch Company, *Plaintiff/Appellant,* v. Chief Engineer of the Division of Water Resources, Kansas State Board of Agriculture, *Defendant/Appellee,* and State of Kansas, *ex rel.,* Robert T. Stephan, *Plaintiff/Appellee,* v. Frontier Ditch Company, *Defendant/Appellant.*

(704 P.2d 12)

Opinion filed July 26, 1985.

*Michael K. Ramsey,* of Hope, Mills, Bolin, Collins & Ramsey, of Garden City, argued the cause and was on the brief for the appellant.

*Leland E. Rolfs,* counsel—Kansas State Board of Agriculture, Topeka, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

Herd, J.: This appeal is from a summary judgment upholding a cease and desist order issued by the chief engineer of the Division of Water Resources of the Kansas State Board of Agri-

culture. The order prohibits appellant, Frontier Ditch Company, from diverting water in excess of its vested right.

The charter of Frontier Ditch Company is dated February 23, 1895. The company began making diversions for beneficial use from the Arkansas River in 1896.

Appellant's headgates are located in Colorado. Diversions by appellant are administered in the State of Kansas pursuant to Article VI, B of the Arkansas River Compact.

In 1945, the Kansas Water Appropriation Act was passed. K.S.A. 82a-701 *et seq.* The Act ordered the chief engineer of the Division of Water Resources of the Kansas State Board of Agriculture to determine all vested rights in water prior to 1945 in order to determine what rights currently existed.

On April 8, 1950, the chief engineer issued an order determining vested rights of appellant. The order determined appellant's vested right to be a maximum quantity of 4,000 acre feet per year to be diverted at a maximum rate of 55 cubic feet per second. No appeal was taken from this order.

Frontier later requested reevaluation of the annual quantity of water diverted. The chief engineer sent staff members to Hamilton County to conduct a survey of the acreage irrigated to aid in the reevaluation. After making a field inspection, studying aerial photographs and meeting with members of the ditch company, on February 12, 1959, the agency concluded that an error had been made in the original determination as to the number of acres irrigated by appellant. Consequently, a supplemental order was issued by the chief engineer on July 2, 1959, increasing the annual authorized quantity from 4,000 acre feet to 5,000 acre feet per calendar year.

For the years 1959-83, the chief engineer measured the following diversions by appellant:

| Year | Gross | Return Flow | Net |
|------|-------|-------------|------|
| 1959 | 12,348 | No Records | 12,348 |
| 1960 | 7,703 | 2,724 | 4,979 |
| 1961 | 10,742 | 5,476 | 5,266 |
| 1962 | 12,081 | 4,292 | 7,789 |
| 1963 | 8,911 | 1,647 | 7,264 |
| 1964 | 7,691 | 1,640 | 6,051 |
| 1965 | 4,319 | 490 | 3,829 |
| 1966 | 8,973 | 4,668 | 4,305 |
| 1967 | 12,651 | 6,860 | 5,791 |
| 1968 | 14,447 | 6,089 | 8,358 |

| 1969 | 6,711 | 2,154 | 4,557 |
|------|--------|------------|--------|
| 1970 | 12,914 | 5,320 | 7,594 |
| 1971 | 17,181 | 7,193 | 9,988 |
| 1972 | 16,678 | 3,674 | 13,004 |
| 1973 | 9,521 | 3,782 | 5,739 |
| 1974 | 9,397 | 2,788 | 6,609 |
| 1975 | 8,649 | 2,418 | 6,231 |
| 1976 | 6,384 | 4,100 | 2,284 |
| 1977 | 5,331 | 1,934 | 3,397 |
| 1978 | 6,049 | 1,468 | 4,581 |
| 1979 | 5,328 | No records | 5,328 |
| 1980 | 9,818 | No records | 9,818 |
| 1981 | 11,900 | 3,292 | 8,608 |
| 1982 | 10,497 | 2,521 | 7,976 |
| 1983 | 8,165 | 2,647 | 5,518 |

On June 30, 1982, the Associated Ditch Companies, a downstream ditch company, complained to the State that appellant, the most upstream ditch company, was taking more than its vested right. This resulted in the five downstream ditch companies being restricted to diversion of only a fraction of the water to which they had a vested right. From 1974 to 1981, a period of extremely decreased flows in the Arkansas River, appellant had net diversions of 2.6 acre feet per acre, while Associated Ditch Companies had diversions of only .32 acre feet per acre.

On August 11, 1982, the chief engineer issued a legal notice to appellant to cease and desist from further diversions in excess of its vested right. Appellant obtained a temporary injunction from this cease and desist order. Subsequently, the State filed this action praying for an order permanently enjoining appellant from diverting waters in excess of its vested right. The district court granted summary judgment, upholding the cease and desist order restricting Frontier from diverting more than its vested right. Frontier appeals.

The first issue to be considered is whether the trial court erred in denying Frontier's motion to allow reconsideration of its vested right.

To defend against the cease and desist order, Frontier sought to show its vested right was incorrectly calculated from the beginning. The trial court held that issue was barred by laches, the statute of limitations, the failure to exhaust administrative remedies, and by failure to appeal within 60 days from the establishment of its vested right.

Frontier argues this decision was erroneous since the vested right is merely a determination of an existing right, and, therefore, if the chief engineer takes away such an existing right, he illegally exceeds his authority. Frontier also argues the chief engineer's determination of its vested right was not supported by substantial competent evidence as to the trial court's application of affirmative defenses. Frontier argues its failure to appeal from the 1959 determination of its vested right does not bar the raising of the issue of the validity of the vested right in this case, and that estoppel barred the chief engineer from complaining of Frontier's taking in excess of its vested right. Frontier also argues the application of the statute of limitations was improperly raised sua sponte by the trial court.

As to the first allegation of error on the issue of whether the trial court improperly excluded from consideration the validity of Frontier's vested right, appellant argues the vested right is merely the recognition of an existing right by way of determining how much water was taken prior to 1945, which was the effective date of the Water Appropriation Act. Appellant's statement is confirmed by this court's decision in *Williams v. City of Wichita*, 190 Kan. 317, 334, 374 P.2d 578 (1962), wherein we held:

"The scheme of the Act was that vested rights of common-law users would be ascertained by the chief engineer of the Division of Water Resources (82a-704) based upon pre-1945 usage for beneficial purposes. When such water-use rights are determined, the Act recognizes a superior vested right of such users to continue their pre-1945 uses in the same amounts and at the same rate of diversion that were then in effect. Hence it may be said that the appropriation doctrine in the rule of priority of right were intended to apply only to such water as was not being beneficially used at the time of the passage of the Act, that is, to our undeveloped and consequently unused water resources. That is made clear by Sec. 82a-701(d) which adopted the committee's recommendation that the 'existing common-law uses' be determined, defined and protected. It is these recognized use rights that may not be taken or destroyed in the absence of due process of law."

Also in support of its position, Frontier cites comments of Professor Shurtz, former professor of water law at the University of Kansas. Professor Shurtz' comments urged the legislature to amend the Water Appropriation Act, declaring the chief engineer's determination of vested rights be not binding. The legislature did not adopt Mr. Shurtz' suggestions but enacted the language that Professor Shurtz stated meant one's vested right was only that which was determined by the chief engineer. See

Shurtz, *Report on the Laws of Kansas Pertaining to the Beneficial Use of Water*, Bulletin No. 3, Kansas Water Resources Board 57, 92 (November, 1956). The use of Professor Shurtz' comments is detrimental to Frontier's cause. It shows the legislature refused to enact the professor's version of the effect of determined vested water rights and made the chief engineer's determination of vested rights final, subject only to appeal. This issue is without merit.

Frontier next argues the chief engineer, in determining its vested right, exceeded the scope of his authority. In support, Frontier shows that the amount determined by the chief engineer to be the vested right of each of the six ditch companies equaled two acre feet per acre per year. Hence, appellant argues the chief engineer's determination was not based on a factual determination of each individual ditch company's pre-1945 diversions for beneficial use since the ditch companies obviously did not all divert the same amount per acre. This would have been a potent argument in 1945, but it was not presented at that time.

Frontier argues the chief engineer's determination was not supported by substantial competent evidence. Again, this issue would have been a sound basis for testing the chief engineer's factual determination by appeal in either 1950 or 1959. This was not done. The law pertaining to the finality of unappealed administrative determinations is controlling, as discussed in the next issue.

Frontier's argument is that its failure to appeal the chief engineer's decision in 1959 does not bar its claim now, 23 years later.

Appellant first contends the State may not raise the doctrine of res judicata to bar appellant's request for redetermination. The State has not relied on the doctrine of res judicata; thus, this point need not be addressed.

Frontier complains the chief engineer's determination of its vested right was a quasi-judicial proceeding and that appeal from such a proceeding is not de novo. Hence, appellant concludes any due process violations would not be cured on appeal, thereby allowing them to be raised at any time. Appellant argues there were due process violations in the chief engineer's determination. These violations occurred when the chief engineer

allegedly stated only the conclusions in his order, without the factual basis on which the conclusions were made.

While this is an interesting argument, it avoids the real point. The point is that appellant is 23 years past its appeal time. K.S.A. 82a-724 provides a 60-day period in which to appeal a determination of the chief engineer as to any vested right. Appellant's vested right determination was made in 1959. We have held the right to an appeal is neither a vested nor a constitutional right, but is strictly statutory in nature. See *Szoboszlay v. Glessner*, 233 Kan. 475, Syl. ¶ 1, 664 P.2d 1327 (1983). Thus, if appellant wanted to argue due process violations, that should have been done in 1959, within 60 days from the chief engineer's determination. No appeal was taken; hence, Frontier waived its right to raise these issues.

Frontier next argues the chief engineer's failure to act prior to 1980 estopped him from raising the issue of its taking more than its vested right.

Frontier notes that, although estoppel usually cannot be claimed against the state, where a statute exists mandating state action and the state does not act, then the state may be estopped from asserting a violation of the act by others. In support, appellant cites *State, ex rel., v. Paul and Grice*, 113 Kan. 412, 214 Pac. 425 (1923), wherein this court held:

"Counsel for appellants call our attention to a respectable line of decisions which hold that the state itself may be estopped to assert its rights in a public highway through nonuse, silence, apparent acquiescence, length of time, adverse possession, abandonment, long use at variance with the originally established road limits, and the like. This court has never given its sanction to any such doctrine. It is altogether out of accord with the theory of Kansas jurisprudence. Beginning with *Wood v. M. K. & T. Railway Co.*, 11 Kan. 323, 349, there is a long and undeviating line of decisions down to and including *In re Moseley's Estate*, 100 Kan. 495, 164 Pac. 1073, and *The State, ex rel. v. Piper*, 103 Kan. 794, 798, 176 Pac. 626, which hold that laches and estoppel do not operate against the state, that no procrastination of public officials prejudices the state and that their tardiness neither bars nor defeats the state from vindicating its sovereign rights, *except where positive statutes so provide.* That the state's rights in a public highway differ in no material respect from any other of its manifold sovereign interests and concerns is also settled law." (Emphasis added.)

The "positive statute" Frontier cites is K.S.A. 82a-704 (Weeks), which was replaced by K.S.A.82a-704a in 1978. It argues K.S.A. 82a-704 (Weeks) imposed a duty on the chief engineer to determine vested rights. Frontier argues this duty included the duty

of the chief engineer to act on requests to determine vested rights, to determine violations of those vested rights, and to issue cease and desist orders to enjoin any taking in excess of those rights. Thus, by virtue of the chief engineer's failure to act, Frontier argues, it acquired the vested rights to the total amount of water it diverted, even though the amount was illegally in excess of its vested right.

The State agrees K.S.A. 82a-704 (Weeks) imposed a duty on the chief engineer to determine all vested rights in the State of Kansas. The chief engineer determined Frontier's vested right and Frontier has provided no evidence that it ever requested a determination which was not acted upon by the chief engineer, until the request for a reconsideration was made in July, 1980, in response to the filing of this action.

The State next points out it was not until January 1, 1978, that legislation provided penalties for diversion of water in excess of the maximum allowed under either a vested right or an appropriation permit. See K.S.A. 82a-728. Prior to January 1, 1978, the chief engineer had no authority under the Kansas Water Appropriation Act to limit appellant's diversion to its vested right. However, after the 1978 amendments to the Act, when the complaint was received from Associated Ditch Companies, the chief engineer promptly acted on that complaint by filing a cease and desist order.

Frontier argues the change in the law in 1978 repealing K.S.A. 82a-704 (Weeks) and enacting K.S.A. 82a-704a required the chief engineer to act prior to 1980 to stop Frontier from taking more than its vested right. This argument overlooks the reason for the change in the laws in 1978.

K.S.A. 82a-704 (Weeks) required the chief engineer to determine all vested rights. No entity was limited to its pre-1945 amount until the chief engineer determined what that amount was and told the party what it would be. Thus, the entire burden of limiting users to their vested rights was on the chief engineer. In 1978, the legislature repealed the old law and passed the new statute which provided:

"All persons claiming a vested right for the beneficial use of water . . . which has not been determined pursuant to K.S.A. 82a-704, shall file by July 1, 1980, with the chief engineer a verified claim for such vested right. The chief engineer shall not accept any such claim after such date." K.S.A. 82a-704a(a).

Thus, for any remaining vested rights which had not been determined by 1978, the burden shifted to the party wishing to establish a vested right.

If Frontier had a problem with its vested right, it once again in 1978 was granted a two-year period in which to complain. Again, Frontier made no complaint.

Frontier's final argument on this point is that the statute of limitations should not apply since the issue was raised by the trial court *sua sponte* and not by the appellee in its pleadings. K.S.A. 60-208(c) requires appellee plead all affirmative defenses, including the statute of limitations.

While the court may raise issues on its own motions, it is limited to issues of jurisdiction. Affirmative defenses, such as the statute of limitations, are not jurisdictional questions; thus, the issue was improperly raised by the court and constitutes error.

The court, however, properly held the action barred by laches, failure to appeal within the statutory time, and failure to pursue administrative remedies; thus, the error was harmless.

The next issue requires determination of whether K.S.A. 42-302 authorizes Frontier to divert more water than allowed by its established vested right.

Frontier's vested right was established in 1959 at 5,000 acre feet per year. Since that time, Frontier has diverted more water than its vested right for 18 years and diverted less than that amount for 7 years. Since Frontier is the most upstream taker, its continual exceeding of its vested right has left many ditch companies downstream without sufficient water to supply their vested rights.

Frontier claims, pursuant to K.S.A. 42-302, it is allowed to take more than its vested right. This statute provides:

"The appropriation of water hereafter shall in every case be deemed and be taken to be accomplished and effectual only as to so much water as shall have been actually applied to beneficial uses within a reasonable time after the commencement of the works by means of which such appropriation is intended to be made, or afterwards where no appropriation has in the meantime been initiated by others, together with the reasonable amount necessary to supply losses by waste, seepage and evaporation . . . ."

Frontier's argument is that the plain meaning of the statute is that it is allowed to take its vested right *plus* an additional amount to make up for waste, seepage and evaporation. In

support appellant cites K.S.A. 82a-701(d), which defines "vested right" to mean "the right of a person under common law or statutory claim to continue the use of water having actually been applied to any beneficial use, including domestic use, on or before June 28, 1945, to the extent of the maximum quantity and rate of diversion for the beneficial use made thereof . . . ." Frontier argues the vested right, therefore, is that amount of water *actually* diverted for the beneficial use; hence, pursuant to K.S.A. 42-302, a person is allowed to divert the amount of water needed for beneficial use (vested right) *plus* an additional amount for waste, seepage and evaporation. Appellant argues since the two statutes are inconsistent, the law requires the more specific statute to be applied. That would require enforcement of K.S.A. 42-302, which allows the diversion of water for the actual beneficial use as well as an additional amount for waste, seepage and evaporation.

Frontier also argues K.S.A. 42-302 was not implicitly repealed when the Kansas Water Appropriation Act, K.S.A. 82a-701 *et seq.*, became law, thus it is still valid and must be applied.

The State argues in response that the trial court held, and the chief engineer agrees, that a water right holder is entitled to a water right which allows for reasonable losses such as those from seepage and evaporation. Appellee argues, however, that the vested right of Frontier takes into account those losses.

We agree. A vested right is determined from what the company was *actually* diverting prior to 1945. Hence, the determination of the amount previously diverted includes waste, seepage and evaporation.

Thus, Frontier's argument for an additional allowance for waste, seepage and evaporation is clearly not within the legislative intent of the Act. As the district court stated, "[t]he scheme of the statutes is one of conservation and control . . . . [T]he amount of water reaching a field is absolutely irrelevant to those downstream with no water. It is the amount of water leaving the common source in the first instance that counts." Thus, allowing water in excess of a vested right to go to one company is not only a violation of statute, but it results in that which the legislature intended to control. The evidence in the court below was that appellant's continuous diversion of more than its vested right left downstream irrigators with an

inadequate supply of water to satisfy their vested rights. This was clearly what the legislature intended to prevent and led to the development of a scheme for determining vested rights. Therefore, the method provided for in the Act included seepage and evaporation in the determination of Frontier's vested right.

Frontier next argues it was error for the trial court to overrule its motion to compel production of documents.

Frontier made a written request for:

"Engineering and hydrological reports, studies or measurements relating to infiltration or seepage losses occurring in canals or ditches between the Frontier Ditch headgates and the ultimate points of application for beneficial use, applications, orders, permits, supplemental orders, and correspondence of any nature; except that copies of pleadings and court captioned documents, other than any orders of the court entered of record, concerning prior litigation between Frontier Ditch Company and the Chief Engineer of the Division of Water Resources are not requested to be produced."

The State objected. Appellant then filed a motion to compel discovery, seeking the court to order discovery of:

"[a]ny information related to engineering and hydrological reports, studies or measurements relating to infiltration or seepage losses occurring in canals or ditches between the Frontier Ditch headgate and the ultimate points of application of beneficial use."

The court disallowed discovery of any information concerning Frontier's belated attempt to contest the size of its vested right.

We previously held Frontier waived its right to contest the determination of its vested right by failing to appeal. The discovery requested pertains to that issue and is therefore irrelevant. Thus, the trial court correctly denied discovery. This issue is without merit.

The judgment of the district court is affirmed.