(57 P.3d 819)
No. 87,998

WILLIAM C. HUFFMIER, *Appellant*, v. JOAN HAMILTON, *Appellee*.

 Opinion filed
October 25, 2002. 

*Margie J. Phelps*, of Topeka, and *Rebekah A. Phelps-Davis*, of Phelps-Chartered, of Topeka, for appellant.

*Mark L. Bennett, Jr., J. Roger Hendrix*, and *Penny R. Moylan*, of Bennett, Hendrix & Moylan, of Topeka, for appellee.

Before BEIER, P.J., ELLIOTT and KNUDSON, JJ.

ELLIOTT, J.: William C. Huffmier, former Shawnee County undersheriff, appeals the summary judgment entered in favor of Joan Hamilton, former Shawnee County district attorney, on his state law tort claims and federal 42 U.S.C. § 1983 claim.

We affirm.

This case is collaterally related to the ouster of former Shawnee County Sheriff David Meneley. See *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 22 P.3d 124 (2001).

For present appeal purposes, the factual background is undisputed. Hamilton filed a charge of criminal threat against Huffmier and filed an affidavit of probable cause to obtain an arrest warrant. At preliminary hearing, the district court dismissed the charge against Huffmier, finding the evidence was too weak, indirect, and indefinite to establish the charge.

Huffmier then filed the present case against Hamilton and others; he does not appeal the dismissal of the other defendants from the lawsuit.

Counts I and IV seem to contain the same state law tort claims of malicious prosecution; Count III alleged the state law tort claim of invasion of privacy; and Count II alleged Hamilton violated his First Amendment right to associate with others, in violation of 42 U.S.C. § 1983 (2000).

The trial court treated Hamilton's motion to dismiss as one for summary judgment, since both parties referred in their briefs to the affidavit filed in the criminal case. See K.S.A. 60-212(b) and

(c); *Davidson v. Denning*, 259 Kan. 659, 666-67, 914 P.2d 936 (1999).

The trial court dismissed the state law tort claims on the common-law doctrine of "absolute privilege." See, *e.g.*, *Froelich v. Adair*, 213 Kan. 357, 360, 516 P.2d 993 (1973).

With respect to the § 1983 claim, the trial court ruled, based on its interpretation of *Kalina v. Fletcher*, 522 U.S. 118, 139 L. Ed. 2d 471, 118 S. Ct. 502 (1997), that Hamilton enjoyed absolute immunity from the § 1983 claim. The trial court also ruled, *sua sponte*, that Hamilton enjoyed qualified immunity.

When, as here, summary judgment is based on undisputed facts, it is reviewable de novo on appeal. *Ekan Properties v. Wilhm*, 262 Kan. 495, 501, 939 P.2d 918 (1997). Whether a governmental official is protected by absolute immunity from a § 1983 claim is likewise reviewed de novo. *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000). And we also review the trial court's resolution of qualified immunity issues on summary judgment on a de novo basis. *Farmer v. Perrill*, 288 F.3d 1254, 1258 (10th Cir. 2002).

### The state law tort claims

Huffmier argues Hamilton is not entitled to immunity from the state law claims under K.S.A. 2001 Supp. 75-6104(e), the discretionary function/duty exception to the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.* Hamilton did not raise this immunity as a defense; the issue was not argued to the trial court nor did the trial court rule on this issue. We do not review issues not presented to the trial court or considered by the trial court in issuing its ruling. See *Dalmasso v. Dalmasso*, 269 Kan. 752, 765, 9 P.3d 551 (2000).

Rather, the trial court ruled in Hamilton's favor on the state law tort claims based on the Kansas common-law doctrine of absolute privilege in court proceedings. Huffmier does not argue this was in error, claiming the state law tort claims were decided adversely to him for the same reason the § 1983 claim was dismissed.

Such is not the case. The state law tort claims were dismissed pursuant to the state law doctrine of "absolute privilege" under *Froelich*, while the § 1983 claim was dismissed on the basis of the

*federal* doctrine of absolute immunity and on the basis of qualified immunity, yet another *federal* defense to a *federal* claim.

State law defenses to state law claims are simply not the same as federal law defenses to federal claims. The issue of absolute immunity was discussed in *McCormick* only with respect to plaintiff's § 1983 claim, not his state law negligence claims. See *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, 35 P.3d 815 (2001).

Issues not briefed are deemed waived or abandoned. *Bergstrom v. Noah*, 266 Kan. 847, 873, 974 P.2d 531 (1999).

We therefore affirm the dismissal of Huffmier's state law tort claims.

### The absolute immunity issue

As noted, the trial court found Hamilton enjoyed absolute prosecutorial immunity from the § 1983 claim based on its interpretation of *Kalina*, 522 U.S. 118. Subsequent to the trial court's ruling in the present case, our Supreme Court decided *McCormick*. In essence, *McCormick* ruled the trial court's interpretation of *Kalina* was incorrect. See 272 Kan. at 634-36.

There is no difference between the relevant portions of the affidavit at issue in the present case and the one involved in *McCormick*. The trial court erred in finding Hamilton enjoyed absolute immunity from the § 1983 claim.

### The qualified immunity issue

The trial court also ruled, *sua sponte*, Hamilton was entitled to qualified immunity from the § 1983 claim. It is error for a trial court to raise, *sua sponte*, nonjurisdictional issues. *Frontier Ditch Co. v. Chief Engineer of Div. of Water Resources*, 237 Kan. 857, 864, 704 P.2d 12 (1985); *Limestone Farms, Inc. v. Deere & Co.*, 29 Kan. App. 2d 609, 615, 29 P.3d 457 (2001). *Frontier Ditch* clearly holds that "[w]hile the court may raise issues on its own motions, it is limited to issues of jurisdiction." 237 Kan. at 864.

Qualified immunity is not a jurisdictional issue; rather, it is an entitlement not to stand trial or face other burdens of litigation.

See *McCormick*, 272 Kan. 627, Syl. ¶ 3. It was error for the trial court to raise and decide this issue on its own motion.

We note that Hamilton has yet to file an answer in the present case, having filed only a motion to dismiss. Thus, the issue of qualified immunity had not been waived. See *McCormick*, 272 Kan. at 636.

In *McCormick*, the issue of qualified immunity was apparently raised in passing in the motion to dismiss. Quoting *Saucier v. Katz*, 533 U.S. 194, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001), the *McCormick* court held the qualified immunity issue was properly before the court:

" 'Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Ibid.* As a result, *'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' Hunter v. Bryant*, 502 U.S. 224, 227 (1991) *(per curiam).'* 533 U.S. at 200-01." (Emphasis added.) 272 Kan. at 637.

It is unclear to us from the *McCormick* opinion whether the issue of qualified immunity was properly before the court because it was raised, though in passing, at the trial court level or because the issue should be resolved at the earliest possible stage of litigation. In any event, when a trial court chooses to address an issue not raised by the parties, we may similarly address it. See *R. D. Andersen Constr. Co. v. Kansas Dept. of Human Resources*, 7 Kan. App. 2d 453, 456, 643 P.2d 1142, *rev. denied* 231 Kan. 801 (1982). Accordingly, due to the importance of resolving immunity questions as soon as possible, under the facts presented, we choose to address the qualified immunity issue.

Here, the trial court applied the heightened pleading standard of *Breidenbach v. Bolish*, 126 F.3d 1288, 1292 (10th Cir. 1997), and found the petition did not allege a violation of a clearly defined constitutional right. Specifically, the trial court found Hamilton was entitled to qualified immunity because the issue of whether a prosecutor could sign an affidavit for an arrest warrant was not clear

under Kansas law (*McCormick* had not yet been decided at the time the affidavit was signed).

The trial court's rationale was wrong on a couple of fronts.

The heightened pleading standard requires the complaint/petition to contain "specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." *McCormick*, 272 Kan. at 637 (quoting *Van Deelen v. City of Eudora, Kan.*, 53 F. Supp. 2d 1223, 1232-33 [D. Kan. 1999]).

But the Tenth Circuit Court of Appeals, in analyzing the effect of *Crawford-El v. Britton*, 523 U.S. 574, 597-98, 140 L. Ed. 2d 759, 118 S. Ct. 1584 (1998), on the *Breidenbach* heightened pleading standard, concluded the rule could no longer be applied. *Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001). Both *Crawford-El* and *Currier* were decided before the trial court's memorandum decision in the present case. The *McCormick* court followed the lead of the Tenth Circuit, holding that when a § 1983 violation is claimed, the heightened pleading standard is no longer applicable. 272 Kan. at 638.

The second error in the trial court's analysis is that the uncertainty in the law regarding the effect of a prosecutor's signing an affidavit of probable cause has no bearing on the issue of qualified immunity. Instead, the issue of qualified immunity requires an application of the two-part test set forth in *Saucier*, 533 U.S. at 200-01: First, do the facts alleged show the governmental official's conduct violated a constitutional right? Second, was the constitutional right clearly established? See *McCormick*, 272 Kan. at 642.

Neither *Kalina* nor *McCormick* established a constitutional right regarding a prosecutor signing an affidavit; rather, the allegations in both of those cases were based on a violation of the right to be free from unreasonable seizures.

In the present case, Huffmier alleged his constitutional right of association was violated by Hamilton. The uncertainty of the law regarding the effect of a prosecutor signing an affidavit on her ability to assert immunity simply has no bearing on the question of

whether Huffmier sufficiently alleged a violation of this First Amendment right.

Turning to the merits of the qualified immunity issue, the factual allegations, taken in a light most favorable to Huffmier, simply do not show Hamilton's actions violated his right to associate freely with others.

We begin with a brief review of right to associate law, since many members of the bench and bar may not possess much familiarity with it.

The First Amendment to the United States Constitution accords special protection to two different forms of association: "intimate association" and "expressive association." See *Dallas v. Stanglin*, 490 U.S. 19, 23-25, 104 L. Ed. 2d 18, 109 S. Ct. 1591 (1989); *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984).

### Intimate association

The right to "intimate association" deals with the institution of marriage and familial relationships. See *Roberts*, 468 U.S. at 619. "The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family." 468 U.S. at 619.

On the other hand,

"only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty. Conversely, an association lacking these qualities—such as a large business enterprise—seems remote from the concerns giving rise to this constitutional protection. Accordingly, the Constitution undoubtedly imposes constraints on the State's power to control the selection of one's spouse that would not apply to regulations affecting the choice of one's fellow employees." 468 U.S. at 620.

Further, recognizing that many associations are made which lie between these two points, the Court noted that "[d]etermining the limits of state authority over an individual's freedom to enter into a particular association therefore unavoidably entails a careful as-

sessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." 468 U.S. at 620. Among the factors courts are to apply include "size, purpose, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." 468 U.S. at 620.

### Expressive association

The right of "expressive association" is the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." *Roberts*, 468 U.S. at 618.

### Analysis

In order to establish his First Amendment claim under § 1983, Huffmier must prove wrongful conduct by Hamilton and that the wrongful conduct had a chilling effect on his associational rights. See *National Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521, 1531 n.4 (10th Cir. 1994).

In his petition, Huffmier contends Hamilton caused a frivolous and false charge to be filed against him in order to "punish Mr. Huffmier for being a friend of Dave Meneley and part of his staff, and to make Mr. Huffmier unavailable as a witness for Dave Meneley in his criminal prosecution." The petition further alleges Hamilton "acted with a political malice toward and against plaintiff with a desire to gain an advantage in the public controversy with Dave Meneley. Further [she] acted with a motive to punish and harm plaintiff because of his association with him."

We fail to see, even if the facts as alleged are true, and viewing them in a light most favorable to Huffmier, that Hamilton caused him to be unable to associate with *anyone*, much less deprived him of any "intimate" or "expressive" associations. There are no allegations Huffmier was deprived of a friendship with Meneley. In fact, he pled that he did maintain an association with Meneley.

We also doubt mere friendships are protected by the association clause.

We may affirm the trial court on grounds different than those stated by the trial court. *Bergstrom v. Noah*, 266 Kan. at 875-76. Accordingly, the trial court's dismissal of Huffmier's § 1983 claim on qualified immunity grounds was appropriate and is affirmed.

*The immunity with respect to Hamilton's role in investigating the allegations brought forth in the affidavit*

Finally, Huffmier also claims Hamilton does not enjoy absolute immunity from the § 1983 claim for her acts of investigation.

This claim is wholly derivative and dependent on the claim Hamilton violated Huffmier's association rights by filing the affidavit. There is no allegation in the petition the investigation personally undertaken by Hamilton, if any, in and of itself violated his association rights. *Cf., e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 125 L. Ed. 2d 209, 113 S. Ct. 2606 (1993); *Milstein v. Cooley*, 257 F.3d 1004 (9th Cir. 2001).

We previously held Hamilton is entitled to qualified, but not absolute, immunity on the claim she violated Huffmier's association rights by filing the affidavit in which she personally vouched for the facts stated in the affidavit. This issue also fails.

Affirmed.