858

(265 P.3d 577)
No. 105,442

KRISTIN L. WAGNER, *Appellant*, v. STATE OF KANSAS, and JOAN WAGNON, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE KANSAS DEPARTMENT OF REVENUE, *Appellees*.

Opinion filed November 18, 2011.

*Brian L. Burge*, of Sanders Warren & Russell, LLP, of Overland Park, for appellant.

*William E. Waters*, of Kansas Department of Revenue, for appellees.

Before MALONE, P.J., MARQUARDT and HILL, JJ.

HILL, J.: Kristin L. Wagner sued both the State of Kansas and Joan Wagnon in her capacity as Secretary of the Kansas Department of Revenue claiming one of her directives to all county appraisers improperly allowed appraisers to consider the price a homeowner has listed his or her real estate as one of the factors to consider when assessing fair market value. In Wagner's view, this directive is illegal and infringes on her freedom of speech as a

homeowner. In other words, the higher the listing price, the higher the appraised value for tax purposes. The district court granted the defendants' motions for judgment on the pleadings. We affirm the district court.

*Wagner bought a tract of real estate, listed it for sale, and her appraised value rose.*

The parties have no dispute about the facts of this case. In October 2003, Wagner purchased a tract of improved real property in Johnson County for $510,000. In February 2005, the Johnson County Appraiser's Office valued the property at $521,000 for tax purposes. Without making any improvements to the property, Wagner decided to list it for sale for $725,000 in October 2005. Then, in February 2006, the Johnson County Appraiser's Office notified Wagner that the 2006 appraised value of the property was $721,700, even though the average value of comparable properties initially used to obtain the property's value was $524,484. Wagner appealed, and the Board of Tax Appeals eventually reduced the 2006 appraised value to $561,000.

For her next step, Wagner filed a petition for declaratory judgment and injunctive relief against the Board of County Commissioners of Johnson County and the State of Kansas in October 2009. Wagner alleged that she wanted to sell her house but was "apprehensive and hesitant to list the house on the open market for fear that any price set forth on the listing will become the de facto value of her Property for purposes of tax assessment by the County." Wagner's claim for declaratory relief against Johnson County concerned her 2007 tax valuation. This claim was later dismissed by Wagner. Despite that, Wagner also made a claim for declaratory relief against the State, arguing that the State erred in interpreting K.S.A. 79-503a to allow the use of listing price in determining fair market value for real property. Finally, Wagner alleged the interpretation of K.S.A. 79-503a allowing the listing price to be used in determining property value infringed on her "freedom of speech to market her property at a price of her choosing" and created a chilling effect by making her fear that the listing price she chose would become the property value for tax purposes.

After the cause of action against Johnson County was dismissed, the district court transferred venue to Shawnee County District Court. Wagner then filed a motion to amend her petition to assert a claim for injunctive and prospective relief under 42 U.S.C. § 1983 (2006) against the Secretary of Revenue, Joan Wagnon (Secretary). The district court granted the motion. The Secretary and the State filed a motion for judgment on the pleadings. Wagner filed a motion in response and a cross-motion for judgment on the pleadings. The district court granted the defendants' motion for judgment on the pleadings and dismissed Wagner's petition.

*A note on judgments on the pleadings.*

Wagner argues the district court erred in granting the defendants' motion for judgment on the pleadings instead of her motion. The essence of this issue questions which party has the more correct view of the law. This court has unlimited review when determining whether the district court properly granted a motion for judgment on the pleadings. *Koss Construction v. Caterpillar, Inc.*, 25 Kan. App. 2d 200, 201, 960 P.2d 255, *rev. denied* 265 Kan. 885 (1998).

"A motion for judgment on the pleadings requires the trial court to determine whether, upon the admitted facts, the plaintiff has stated a cause of action. [Citation omitted.] If successful, the motion can dispose of the case without a trial because the pleadings frame the issues in such a way that the disposition of the case is a matter of law on the facts alleged or admitted, leaving no real triable issue. [Citation omitted.] The motion operates as an admission by movant of all fact allegations in the opposing party's pleadings. [Citation omitted.]" *Purvis v. Williams*, 276 Kan. 182, 186-87, 73 P.3d 740 (2003).

Wagner asserts that the Department of Revenue's appraisal directive No. 98-033, issued by the Director of Property Valuation, improperly allows county appraisers to consider listing price when determining fair market value for property tax purposes under K.S.A. 2010 Supp. 79-503a. To properly analyze this issue, it is first necessary to review the appraisal process set out in our statutes.

*All property must be appraised based on fair market value.*

There are several Kansas statutes that explain the process involved in determining property taxes. K.S.A. 79-501 requires that

each parcel of real property be appraised for taxation purposes to determine its fair market value. In turn, K.S.A. 2010 Supp. 79-503a defines "fair market value" as "the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion." That statute also includes a *nonexclusive list* of factors that should be considered in addition to sales when determining fair market value. That list includes considerations such as the classification of the land, its size, location, cost of reproducing any improvements, sale value on an open market, and any use restrictions. The statute concludes with the following:

"The appraisal process utilized in the valuation of all real and tangible personal property for ad valorem tax purposes shall conform to generally accepted appraisal procedures which are adaptable to mass appraisal and consistent with the definition of fair market value unless otherwise specified by law." K.S.A. 2010 Supp. 79-503a.

Following that law, K.S.A. 79-505 authorizes the Director of Property Valuation to "adopt rules and regulations or appraiser directives prescribing appropriate standards for the performance of appraisals in connection with ad valorem taxation in this state."

Such a directive is the one complained about by Wagner, appraisal directive No. 98-033, issued by the Director of Property Valuation to answer the question of whether the listing price for a property could be considered the property's fair market value for Kansas property tax purposes. Published in 1998, the directive commands: "The county appraiser shall not use the listing price of property as the sole criteria for determining the fair market value of property for Kansas property purposes." The directive goes on to review the law and states:

"K.S.A. 79-503a also requires a county appraiser to consider several factors when determining the fair market value of property for tax purposes. These factors comprise the three approaches to value: the sales approach, the cost approach and the income approach. All appraisers must consider and apply the three approaches to value in order to determine the fair market value of property when data to perform each approach is readily available."

The directive concludes with:

"Generally accepted appraisal procedures do provide that an appraiser should consider a listing price when determining the fair market value of property. However, it is wholly inappropriate for an appraiser to complete an appraisal simply by assigning the amount, or a percentage of the amount, of the listing price as the taxable value of a property. The listing price is simply one factor to consider when it exists; it is by no means the sole criteria of market value or the strongest indicator of market value."

Directives such as these are considered administrative rules or regulations, which have the force and effect of law. See K.S.A. 77-425; *Board of Sedgwick County Comm'rs v. Action Rent to Own, Inc.*, 266 Kan. 293, 299-300, 969 P.2d 844 (1998). Administrative regulations are presumed to be valid, and one who challenges them has the burden of showing their invalidity. To be valid, rules or regulations of an administrative agency must be within the agency's statutory authority. Rules or regulations that go beyond that authority, violate the statute, or are inconsistent with the agency's statutory powers are void. Further, administrative rules and regulations must be appropriate, reasonable, and consistent with the law. *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 495, 86 P.3d 513 (2004).

*We focus now on Wagner's claims.*

Wagner contends she is entitled to declaratory relief because K.S.A. 79-503a does not authorize the use of listing price to determine fair market value. While it is true that the words "listing price" do not appear in the statute, that does not mean the legislature intended to deny the use of listing price information while making real estate appraisals.

Wagner apparently ignores the language in K.S.A. 2010 Supp. 79-503a that says the list of factors appraisers must consider is "not by way of exclusion." The statute also commands that the appraisal process shall conform to generally accepted appraisal procedures. The use of listing information is found in the generally accepted appraisal procedures. This court has recognized that the Uniform Standards of Professional Appraisal Practice (USPAP) are generally accepted and consistent with the definition of fair market value. See *In re Tax Appeal of Yellow Freight Systems, Inc.*, 36 Kan. App. 2d 210, 213-14, 137 P.3d 1051, *rev. denied* 282 Kan. 790 (2006).

In particular, USPAP Standards Rule 1-5 states that a listing of the property being appraised is a proper consideration in developing a real property appraisal. Clearly, the legislature has directed that appraisals must conform to professional standards and those standards call for the use of listing information. Wagner has failed to show how the statute in some way prohibits the use of listing information.

The district court denied Wagner's claim that appraisal directive No. 98-033 exceeded the agency's statutory authority. The court determined that the Department of Revenue had authority to promulgate additional standards and directives, and appraisal directive No. 98-033 "does no more than say that an owner's declared value needs to be tested, not merely accepted, by local county appraisers."

To us, Wagner argues that appraisal directive No. 98-033 wrongly interpreted USPAP Standards Rule 1-5. These standards are important because K.S.A. 2010 Supp. 79-503a states that the appraisal process should conform to generally accepted appraisal procedures when applicable. Furthermore, K.S.A. 79-505, which gives the Director of Property Valuation the right to adopt appraisal directives, states that at a minimum, the appraisal directives must require that appraisals be in writing and "be performed in accordance with generally accepted appraisal standards as evidenced by the appraisal standards promulgated by the appraisal standards board of the appraisal foundation which are in effect on March 1, 1992." K.S.A. 79-505(a)(1) and (2).

The 1992 version of USPAP Standards Rule 1-5 states that an appraiser must consider, among other things, "any current Agreement of Sale, option, *or listing* of the property being appraised." (Emphasis added.) This same language is quoted in appraisal directive No. 98-033.

In a vain attempt to minimize the effect of the standard, Wagner contends that USPAP does *not* specifically provide that an appraiser should or even can consider listing *price* when developing a property appraisal. Wagner is arguing that because USPAP says only an appraiser should consider a listing, it does not mean an appraiser should consider a listing price. We are not so persuaded.

Clearly, the listing price would be part of the listing, so it would be available and considered by the appraiser. Price is one factor that can be considered.

Next, Wagner makes a series of arguments about why it was unfair for the county to increase her appraisal more than $200,000 in 2006 just because she listed her home for sale at a higher price in late 2005:

- Wagner contends that because of appraisal directive No. 98-033, she is scared to list her home for sale for fear of the listing price becoming the "de facto value of the property for purposes of tax assessment by the County."
- Wagner contends that because there are no "guidelines or formulae set forth regarding what weight an offering price should be given," listing price "can easily become the overwhelming factor justifying an appraiser's valuation so long as some other factor (regardless of how absurd) can be pointed to as an additional consideration."
- Wagner then offers a hypothetical example in which she contends that if a person makes small improvements to his or her home and then lists the house for sale for $200,000 more than its previous year's property tax value, the county could justify increasing the property tax value to the amount of the listing price simply by also relying on the small improvements in addition to the high listing price.

There is no doubt that each of Wagner's scenarios would be improper under K.S.A. 2010 Supp. 79-503a, appraisal directive No. 98-033, and USPAP Standards Rule 1-5. Clearly, Wagner's 2006 appraisal, which appeared to be based almost solely on her listing price, was determined through the appeals process to be unfair, and the property's valuation was lowered. For the most part, the history of Wagner's own case proves that her claims regarding appraisal directive No. 98-033 are unfounded. The Johnson County appraisal was improper because it was based solely on the listing price; the directive was not followed but the value was restored through the administrative appeal.

Looking deeper, we must point out that none of the arguments listed above affect Wagner's actual cause of action, which is her

claim that listing price cannot be utilized by an appraiser because it exceeds statutory authority. Arguing that an appraiser might abuse his or her authority and rely too heavily on listing price is not evidence that Kansas statutes do not allow listing price to be considered. As K.S.A. 2010 Supp. 79-503a and appraisal directive No. 98-033 are written, an appraiser must consider many factors in determining fair market value. If an appraiser relies solely or even too heavily on listing price, the fair market value thus assessed is improper and should be corrected through the appeal process just as it was in Wagner's case.

Next, we move to Wagner's argument that appraisal directive No. 98-033 goes beyond the plain language of the statute by directing that a listing price may be considered by a county appraiser. According to Wagner, K.S.A. 2010 Supp. 79-503a does not include listing price as a factor for determining fair market value, and that should be the end of the analysis. In *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009), the court stated that appellate courts must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meaning.

Wagner fails to explain why appraisal directive No. 98-033 and the district court were incorrect in finding listing price to be a valid consideration when determining fair market value. Wagner simply states that such consideration is arbitrary and capricious, and there is no way to control how it is used in determining fair market value. She contends that considering the listing price is a shortcut appraisers will rely on even though it may have no relation to actual fair market value. Wagner believes that an owner may have any number of reasons for choosing a listing price, and it may not even be the owner's opinion of the home's value. All of these contentions are unfounded. As evidenced by this case, if listing price is used for fair market value without other support for that value, it can be appealed and should be corrected by the appeal process. See K.S.A. 2010 Supp. 79-2005; K.S.A. 2010 Supp. 74-2426.

Wagner's only argument specifically directed toward the district court's decision is her claim that the district court improperly relied on *Brenneisen v. Phillips*, 142 Kan. 98, 100, 45 P.2d 867 (1935),

which states: "The owner of property is presumed to know its value; his opinion of its value is competent, even if it be not very persuasive. [Citations omitted.]" Wagner claims the statement in *Brenneisen* was meant to apply to a person's sworn testimony about the value of his or her home. According to Wagner, this is much different than considering a person's listing price, which Wagner claims can be based on any number of factors.

We must point out first that the district court's ruling was not so simple. In addition to citing *Brenneisen*, the district court also stated:

"It borders on the fallacious to say that a state taxing authority should ignore an owner's own expression of value directly or through the owner's agent. An owner's expression of what sum of money it would take for he or she to part with his or her property as a seller is undoubtedly probative, particularly, if the seller is sincerely attempting to sell the property and the seller is, as well, informed. Whether the opinion given by an owner is informed, realistic, or sincere must be tested by other extrinsic factors. Here, Appraisal Directive #98-033 does no more than say that an owner's declared value needs to be tested, not merely accepted, by local county appraisers."

In our view, the court was emphasizing that an owner's opinion of value is important but not controlling.

The district court properly granted a judgment on the pleadings to the defendants.

*We are not persuaded that the directive infringes upon Wagner's freedom of speech.*

In her next argument, Wagner claims appraisal directive No. 98-033 infringes on her constitutional right to freedom of speech.

As we stated before, appraisal directives issued by the Director of Property Valuation under K.S.A. 79-505 serve as administrative rules or regulations, which have the force and effect of law. See K.S.A. 77-425; *Action*, 266 Kan. at 299-300. This means some presumptions come into play. "A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008). Whether a statute or regula-

tion is constitutional raises a question of law subject to unlimited review. *In re K.M.H.*, 285 Kan. 53, 63, 169 P.3d 1025 (2007).

Fundamental to our system of laws is the United States Constitution. The First Amendment to the United States Constitution states: "Congress shall make no law . . . abridging the freedom of speech." The First Amendment is applicable to the states through the Fourteenth Amendment. *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 33, 20 P.3d 39 (2001). Section 11 of the Kansas Constitution Bill of Rights states each person may freely speak, write, or publish his or her sentiment on all subjects, "being responsible for the abuse of such rights." To establish a First Amendment claim under § 1983, an individual must prove both wrongful conduct and that the wrongful conduct had a chilling effect upon his or her First Amendment associational rights. *Huffmier v. Hamilton*, 30 Kan. App. 2d 1163, 1170, 57 P.3d 819 (2002), *rev. denied* 275 Kan. 964 (2003).

Some federal cases deal with this subject. The United States Supreme Court has held that when analyzing whether regulations violate the First Amendment's guarantee of freedom of speech, the court must first determine whether the regulation is *content-based* or *content-neutral*. Regulations that control speech, that is the message itself, are content-based and are presumptively invalid. See *Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434, 122 S. Ct. 1728, 152 L. Ed. 2d 670 (2002). If the regulation serves purposes unrelated to the content of expression it is considered content-neutral, even if it has an incidental effect on some speakers or messages but not others. *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 686 (1998). Therefore, it was proper for the district court to determine whether appraisal directive No. 98-033 was content-based or content-neutral in order to determine whether it was a valid exercise of governmental authority.

After examining the matter, the district court determined that as it related to free speech, appraisal directive No. 98-033 was content-neutral because "it neither compels, controls, bars, or limits free speech. Its emphasis is directed to the listeners, county appraisers, essentially telling them not to automatically believe all they hear or read." The district court found that any effect on the

speaker was "merely but a self-imposed self-admonition to think before one speaks." According to the district court, Wagner's claim that the directive infringed or chilled her freedom of speech was "far too attenuated to reach a threshold for claiming a First Amendment violation." Ultimately, the district court found that Wagner had failed to cite a case, and the court could find none, that showed appraisal directive No. 98-033 was "either *ultra vires* or an actionable affront to a citizen's right of free speech."

Wagner makes a series of speculative arguments on this point that we deal with summarily:

- Wagner argues that it must be asked "what compelling need the State has in regulating the homeowner's offering price in the market?" This regulation does not regulate homeowner's offering prices. The State has simply determined that a homeowner's offering price is one factor to consider in determining the property's fair market value.

- According to Wagner, appraisal directive No. 98-033 only states that listing price cannot be solely relied on in determining fair market value, so she asks: "Can listing price form 99% of the appraiser's reliance?" The directive may state that listing price cannot be the sole factor in determining fair market value, but it also states that an appraiser must also consider every factor in K.S.A. 2010 Supp. 79-503a. So, if an appraiser bases his or her decision 99 percent on the listing price and that value does not match any of the other appraisal considerations, it would be an improper appraisal.

- Wagner claims that "[i]mposing a tax penalty on the homeowner who dares to list property for sale over and above its government-appraised value" unconstitutionally limits her freedom of speech. Appraisal directive No. 98-033 does not impose a tax penalty on a homeowner who lists his or her property for sale for more than the appraised value. If appraisal directive No. 98-033 is followed, and the listing price is but a part of any fair market value considerations, it would be improper to rely solely on the listing price when considering the property's fair market value.

- Wagner contends that the "considerations underlying an owner's listing price may or may not have anything to do with fair market value, and it is not the role of the government to make that determination." The regulation does not regulate the homeowner, just appraisers. It has been adopted to assure statewide uniform professional appraisals. It does not matter whether the homeowner has considered other fair market value factors in setting an asking price, but what does matter is if the county appraiser has. Appraisal directive No. 98-033 requires the county appraiser to consider those factors.
- Wagner argues she is "understandably apprehensive" to list her home at any price above her current tax valuation. She fears "the listing price will again become the de facto value of the residence for tax purposes." Although that happened initially on Wagner's 2006 appraisal, *it was corrected by the appeals process*. Under appraisal directive No. 98-033, the listing price cannot legally become the de facto value of the residence. She is claiming to be afraid of an improper appraisal. Such an incorrect appraisal would not be caused by the regulation if it was followed, it would come from the regulation *not* being followed.

We agree with the district court that this is a content-neutral regulation that serves a legitimate governmental purpose of preventing county appraisers from taking shortcuts and not following the law. The directive is certainly not addressed to property owners and those owners are free to set a listing price as they desire. Because the directive does not chill a property owner's right to list his or her property for sale at the price of his or her choosing, it does not violate free speech.

In Wagner's final issue, she argues that because she was right in her first two issues, the district court erred in denying her motion for judgment on the pleadings. Because the district court did not err in granting the defendants' motion for judgment on the pleadings, Wagner's argument fails.

Affirmed.