NOT DESIGNATED FOR PUBLICATION

No. 113,496

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

ROBERT W. BECK,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB W. RUMSEY, judge. Opinion filed July 1, 2016.
Affirmed.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennet*, district attorney, and *Derek Schmidt*,
attorney general, for appellant.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellee.

Before MALONE, C.J., LEBEN, J., and JOHNSON, S.J.

LEBEN, J.: The State appeals the district court's decision to grant Robert W. Beck's
motion to correct an illegal sentence. The district court agreed to reclassify Beck's 1991
Arkansas burglary conviction as a nonperson felony and gave Beck a shorter sentence
than he had originally received.

The State argues that a similar Kansas Supreme Court decision, *State v. Dickey*,
301 Kan. 1018, 1034, 350 P.3d 1054 (2015), which granted relief to the defendant,
shouldn't apply because Beck was sentenced in 2009 and *Dickey* wasn't decided until

2015. But *Dickey* just applied previously announced constitutional law, so the same rules should apply to Beck. Beck's case is indistinguishable from *Dickey*, so we approve the district court's reclassification of Beck's prior conviction.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2009, Beck pled guilty to three offender-registration violations. At sentencing, the district court found that Beck had a criminal-history score of "B," based in part on a 1991 Arkansas burglary conviction that was classified as a person felony. Beck's guideline sentencing range was 114, 120, or 128 months. Under the plea agreement, the State recommended the low number in that range, 114 months; the district court followed the State's recommendation and denied Beck's requests for probation or a lower sentence.

In June 2014, Beck filed a motion to correct an illegal sentence, arguing that his criminal-history score had been incorrectly calculated. In October 2014, the district court granted Beck's motion, reclassified his 1991 Arkansas burglary conviction as a nonperson felony, and resentenced him to 53 months in prison based on his new criminal-history score of "C."

The State has appealed to this court.

ANALYSIS

The State argues that the district court shouldn't have reclassified Beck's 1991 Arkansas burglary conviction as a nonperson crime.

K.S.A. 22-3504 provides that "[t]he court may correct an illegal sentence at any time." See *State v. McKnight*, 292 Kan. 776, 779, 257 P.3d 339 (2011) (any party can

2

bring a claim that a sentence is illegal). The Kansas Supreme Court strictly defines an "illegal sentence" as "(1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in the character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served." *Makthepharak v. State*, 298 Kan. 573, 578, 314 P.3d 876 (2013); *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013). A challenge to a criminal-history score, even if it's a constitutionally based challenge, can be properly brought in a motion to correct an illegal sentence. *Dickey*, 301 Kan. at 1034; *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 (2011); *State v. Vasquez*, 52 Kan. App. 2d 708, 712-14, ___ P.3d ___, 2016 WL 1728688 (2016) (distinguishing claim that a sentencing statute is unconstitutional from a claim that a constitutional error caused an incorrect criminal-history score and illegal sentence).

The State first argues that the case the district court relied upon in its decision, *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014, *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016), doesn't apply to the classification of prior burglary convictions. Beck concedes this point on appeal because *Murdock* was overruled last year in *Keel*. The parties are correct: *Murdock* doesn't control here. *Keel*, 302 Kan. at 589-90; *Dickey*, 301 Kan. at 1035.

Even though the district court relied on *Murdock*, Beck argues that it nonetheless reached the correct result under *Dickey*. The question is a purely legal one, so we still would affirm the district court if *Dickey* supports that result. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014); *Huffmier v. Hamilton*, 30 Kan. App. 2d 1163, 1171, 57 P.3d 819 (2002) ("We may affirm the trial court on grounds different than those stated by the trial court."). But the State counters that *Dickey*, decided in 2015, doesn't apply retroactively to cases that were final before it was decided. The district court sentenced Beck in 2009 and he didn't appeal, so his sentence became final in 2009. Thus,

we must determine whether *Dickey* can be applied in Beck's case even though it came 6 years after Beck was sentenced.

We will consider this question in two steps. First, we will consider what the court decided in *Dickey*, so that we can see the basis for that decision. Second, we will consider whether the *Dickey* decision can be applied to Beck.

In *Dickey*, the defendant pled guilty to felony theft, and the district court scored his 1992 juvenile adjudication for burglary as a person felony. The defendant argued on appeal that this classification violated his Sixth Amendment rights under *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

*Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Descamps* applied that principle when it explained how a sentencing court should compare prior-conviction statutes to generic offenses when determining whether the prior conviction was a violent felony that would increase a defendant's sentence under a federal sentencing scheme. 133 S. Ct. at 2281, 2288. Generally, a court can only compare the elements of the relevant statutes and cannot look at the actual facts underlying the prior conviction because doing so could result in the sentencing court finding sentence-enhancing facts (that a prior felony conviction was a "violent felony," for example) that weren't proved to a jury beyond a reasonable doubt (thus violating *Apprendi*). 133 S. Ct. at 2281-82. The sentencing court can only consider the actual facts of the prior crime (using documents such as indictments or jury instructions) when the prior-conviction statute is divisible—that is, when it describes multiple alternatives for a given crime. In other words, when the prior crime could have been committed in more than one way, the sentencing court is allowed to find out how it was committed and therefore which section

of the prior-conviction statute was applied to the defendant. 133 S. Ct. at 2281. The court can then compare the relevant section of the prior-conviction statute to the generic offense and decide, based purely on the statutory elements, whether the prior conviction was a violent felony that would increase the sentence. 133 S. Ct. at 2285.

In *Dickey*, the Kansas Supreme Court determined that *Apprendi* and *Descamps* apply to the Kansas Sentencing Guidelines Act because the Act requires the court to classify prior convictions as person or nonperson crimes, which puts the court at risk of finding a fact about a prior conviction—that it was a person crime—that will increase a defendant's sentence but wasn't proved to a jury beyond a reasonable doubt. See *Dickey*, 301 Kan. at 1039; K.S.A. 2015 Supp. 21-6809 (three person felonies results in a criminal-history score of "A," two results in a criminal-history score of "B," and one results in a "C" or "D"); K.S.A. 2015 Supp. 21-6811(d) and (e) (the facts required to classify prior burglary convictions and prior out-of-state convictions shall be established by the State by a preponderance of the evidence). For out-of-state convictions, we look to the comparable Kansas offense to determine whether the offense was a person or nonperson crime, K.S.A. 2015 Supp. 21-6811(e), and for burglary, the offense is a person crime if it involved a "dwelling" and a nonperson crime if it didn't. See K.S.A. 2015 Supp. 21-5807(a).

The Kansas burglary statute in effect when Dickey committed his prior burglary didn't require evidence that the burglarized structure was a dwelling. *Dickey*, 301 Kan. at 1039. Because the prior burglary statute didn't contain a dwelling element, determining whether the defendant's prior burglary actually involved a dwelling at the criminal-history stage "would necessarily involve judicial factfinding that goes beyond merely finding the existence of a prior conviction or the statutory elements constituting that prior conviction." 301 Kan. at 1021. Therefore, the *Dickey* court concluded that "classifying [the defendant's] prior burglary adjudication as a person felony violate[d] his constitutional rights as described under *Descamps* and *Apprendi*." 301 Kan. at 1021.

5

Here, we must compare the burglary statute in effect in Arkansas in 1991 with the burglary statute in effect in Kansas in 2009. *Keel*, 302 Kan. at 581 ("[T]he comparable post-KSGA criminal statute is the one that was in effect at the time the current crime of conviction was committed."). Arkansas defined burglary in 1991 as entering or remaining "in an *occupiable structure* of another person with the purpose of committing therein any offense punishable by imprisonment." (Emphasis added.) Ark. Code Ann. § 5-39-201 (1987). An "occupiable structure," in turn, was a building, vehicle, or structure:

"'(A) Where any person lives or carries on a business or other calling; or

"(B) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or

"(C) Which is customarily used for overnight accommodation of persons whether or not a person is actually present. Each unit of an occupiable structure divided into separately occupied units is itself an occupiable structure.'" *Julian v. State*, 298 Ark. 302, 303, 767 S.W.2d 300 (1989) (quoting Ark. Code Ann. § 5-39-101 [1987]).

This definition doesn't depend on what the building was being used for, as long as it was *capable* of being occupied. *Julian*, 298 Ark. at 303. For example, the definition covers both residential and commercial buildings, including buildings used for social activities, religious sessions, and classroom meetings. *Barksdale v. State*, 262 Ark. 271, 273, 555 S.W.2d 948 (1977). In 1993, after Beck's conviction, Arkansas amended its burglary statute and created two separate offenses: one for residential burglary (of a "residential occupiable structure") and one for commercial burglary (of a "commercial occupiable structure"). Ark. Stat. Ann. § 5-39-201; 1993 Ark. Sess. Laws Act 442 and Act 552. But in 1991, when Beck was convicted, Arkansas' burglary statute covered both residential and commercial buildings.

6

The comparable Kansas statute designates two types of burglary: one that involves a dwelling and one that doesn't. K.S.A. 2015 Supp. 21-5807(a). (The comparable Kansas statutes are those that were in effect in 2009, when Beck committed the crimes at issue here, but the relevant statutes haven't changed in substance since then. They have been renumbered, so for the convenience of many readers, who can more easily access current statutes, we will cite to current Kansas statutes in this opinion.) Kansas defines "dwelling" as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." K.S.A. 2015 Supp. 21-5111(k). And under K.S.A. 2015 Supp. 21-5807, the only the kind of nonaggravated burglary that is classified a person crime is one that involves a dwelling. See also K.S.A. 2015 Supp. 21-6811(d).

Arkansas' 1991 burglary statute didn't include a dwelling element, and Arkansas' definition of "occupiable structure" in 1991 was broader than Kansas' definition of "dwelling"—a Kansas dwelling was a building "used or intended for use as a human habitation," while an Arkansas "occupiable structure" included commercial buildings that weren't intended for use as a human habitation, as long as they could be "occupied." So to classify Beck's 1991 burglary conviction as a person crime, the district court necessarily found an additional fact about the Arkansas conviction—that Beck burglarized a dwelling, a building used or intended to be used for human habitation. That is a fact only a jury can find, under *Apprendi*, because it is the fact that makes burglary a person crime and thus leads to an increase in the defendant's sentence. *Dickey*, 301 Kan. at 1039-40; see *State v. Wetrich*, No. 112,361, 2016 WL 197808, at *4-5 (Kan. App. 2016) (unpublished opinion) (comparing definitions of "inhabitable structure" and "dwelling" and finding that a 1988 Missouri burglary conviction should have been classified as a nonperson crime under *Dickey*); *State v. Hill*, No. 112,545, 2015 WL 8590700, at *4-6 (Kan. App. 2015) (unpublished opinion) (same for 2004 Missouri burglary convictions). Under *Dickey*, Beck's 1991 conviction should have been classified as a nonperson felony.

The district court was right to make that conclusion, even though the authority it cited—*Murdock*—no longer supports that result.

Even so, the State argues that we can't apply *Dickey* to Beck's case because *Dickey*'s holding doesn't apply retroactively to collateral actions. (A collateral action, like a motion to correct an illegal sentence, is one that is brought after a defendant's conviction and sentence are final.) Generally, "when an appellate court decision changes the law, that change acts prospectively and applies only to all cases, state or federal, that are pending on direct review or not yet final on the date of the appellate court decision." *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013). The State argues that the *Dickey* holding was such a departure from precedent that it should be regarded as a "change" in the law.

In support, the State cites an unpublished decision from 2014 in which this court suggested that *State v. Dickey*, 50 Kan. App. 2d 468, 329 P.3d 1230 (2014), *aff'd* 301 Kan. 1018 (2015), didn't apply to cases on collateral review. *State v. Lewis*, No. 110,050, 2014 WL 5619132, at *3 (Kan. App. 2014) (unpublished opinion). But more recently and with more explanation, panels of this court have been reaching the opposite conclusion. See *Vasquez*, 2016 WL 1728688, at *4-5; *State v. Martin*, 52 Kan. App. 2d 474, 484, 369 P.3d 959 (2016), *petition for rev. filed* May 5, 2016. We find the more recent cases persuasive.

As our court has noted in these more recent cases, the court's holding in *Dickey* wasn't a change in the law; it was instead an application of the constitutional rule announced in 2000 in *Apprendi* and later clarified by *Descamps*. *Vasquez*, 2016 WL 1728688, at *4-5; *Martin*, 52 Kan. App. 2d at 484; see *Dickey*, 301 Kan. at 1021. So for retroactivity purposes, the relevant date is the date that *Apprendi*—a case that *did* establish a new rule of law—was decided. *State v. Gould*, 271 Kan. 394, 414, 23 P.3d 801 (2001) (stating that *Apprendi* must be applied to all cases that arose after June 26,

2000); *Vasquez*, 2016 WL 1728688, at \*4; *Martin*, 52 Kan. App. 2d at 484. Beck's case arose in 2009, well after *Apprendi*, so applying *Dickey* is not an improper retroactive application of that law. See *State v. Hammitt*, No. 113,489, 2016 WL 1079463, at \*4 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* April 18, 2016.

As such, we conclude that the district court was correct to grant Beck's motion, to reclassify Beck's 1991 Arkansas burglary conviction as a nonperson felony, to recalculate Beck's criminal-history score, and to resentence Beck based on that recalculated score.

The district court's judgment is therefore affirmed.